STATE EX REL. ATTORNEY GENERAL *v.* VAN BUREN SCHOOL DISTRICT NO. 42.

4-4076

Opinion delivered January 13, 1936.

*Harvey G. Combs* and *Joseph R. Brown*, for appellants.

*Partain & Agee* and *R. S. Wilson*, for appellees.

MEHAFFY, J. On December 18, 1854, the General Assembly of the State of Arkansas passed an act incorporating the Crawford Institute and appointing trustees for such institute. Section 1 of the act provided that the trustees and their successors are created a body corporate and politic under the care and patronage of the Arkansas Annual Conference of the Methodist Episcopal Church, South, and shall be known and called by the name of the Crawford Institute. Section 3 of the act provided that the institution should be located in or near the city of Van Buren in Crawford County, in this

State. Section 4 of the act provided that the corporation, by and with the advice and consent of the said Annual Conference, shall have the power to appoint all necessary teachers to carry on said Crawford Institute. Section 5 of the act provided that it should be the duty of said corporation to transmit to the Annual Conference of the Methodist Episcopal Church, South, a report of the progress of said Crawford Institute, including statements of the finances thereof, number of pupils, course of studies, and the said Annual Conference may, as often as they think proper, appoint a committee to visit said school and inspect its condition. Section 6 of the act provided that said corporation shall, together with the consent of said Annual Conference, have power to establish departments for the study of any or all of the learned professions, and to institute and grant diplomas in the same, to constitute and confer the degree of doctor in the learned arts and sciences and belle lettres, and to confer such other academical degrees as are usually conferred by most learned universities. Section 7 of the act provided that said corporation, together with said Annual Conference, shall have power to institute a board of competent persons, always including the faculty, who shall examine all applicants, etc.

On April 25, 1856, Alfred Wallace made a will in which he bequeathed $10,000 to Crawford Institute to aid in completing the building being erected and to establish the institution upon a permanent basis. The 26th paragraph of the will read as follows: "I hereby give and bequeath $10,000 to endow the Crawford Institute."

Alfred Wallace died, and on January 10, 1857, the Legislature passed an act changing the name of the institution from Crawford Institute to Wallace Institute. Wallace died in 1856. The Wallace Institute functioned as an educational unit in Crawford County until the war between the States in 1861. It was never thereafter revived as an educational unit, but the trustees made loans from time to time of the money belonging to the institute. Vacancies on the board of trustees were filled from time to time, but in 1883 so many vacancies existed that the Legislature passed an act naming a board of trus-

tees, and § 1 provided that the trustees shall constitute a body corporate and politic under the care and patronage of the Arkansas Annual Conference of the Methodist Episcopal Church, South, to be known by the name of the Wallace Institute.

The State of Arkansas, on relation of the Attorney General, brought this suit to obtain the assets held by the trustees of the Wallace Institute. The defendants named in the suit were the trustees of Wallace Institute, Hendrix College, the Arkansas Annual Conference of Methodist Episcopal Church, South. Hendrix College and the Arkansas Annual Conference of Methodist Episcopal Church, South, filed an answer admitting most of the allegations in the complaint, and alleging that Hendrix College, located in Conway, Arkansas, was serving the educational needs of practically the same territory served by the Crawford Institute and its successor, Wallace Institute; that the general course of study and curriculum of Hendrix College are now of a standard which the Wallace Institute and its predecessor should have maintained under their charter; that Hendrix College is a thriving institution with a creditable endowment fund with substantial buildings and thorough and modern equipment, and the faculty consisting of the highest class of educators; that special emphasis is placed upon Christian life and Christian education; that it is a proper institution to administer the endowment fund given to Crawford Institute by Alfred Wallace; that it is in all respects similar to the Crawford Institute and its successor. They allege that, because of the failure of the Wallace Institute to function and its inability to ever function, the purposes of the Alfred Wallace endowment will fail completely unless the money is given to Hendrix College; that, if the fund is given to it, the intention of the donor in making the bequest will be carried out as nearly as possible and will be used for the maintenance of an institution of higher learning located in Arkansas, under the care and patronage of Arkansas Annual Conference of Methodist Episcopal Church, South. They deny that the claim of Hendrix College is inferior to the claim of the State, and deny that the

fund has escheated to the State of Arkansas; allege that the court had the power to administer the fund under the *cy pres* rule, and allege that the court should order the fund paid over to the trustees of Hendrix College to endow said college.

The Wallace Institute and its board of trustees filed answer admitting practically all of the allegations in the complaint; deny that they have surrendered the charter; admit that the gift from Alfred Wallace was absolute with no right of reversion, and admit that Hendrix College is an institution of learning incorporated under the laws of Arkansas, but deny that it is similar in all respects to Crawford Institute and Wallace Institute, and allege that Conway is 127 miles from Van Buren.

Van Buren School District No. 42 and its board of directors filed an intervention, and adopted the answer of the Wallace Institute and its board of trustees, and in addition thereto alleged that it was clearly the purpose of Alfred Wallace in the will involved in the suit, to promote the interest of education and good morals in Crawford County, Arkansas, at or near Van Buren, and that the public school system maintained by the interveners in Van Buren, Arkansas, constitutes an institution more nearly similar to Crawford Institute than Hendrix College or any other educational institution. They allege that the course of study maintained in the Van Buren school system is similar in all respects to that which was actually maintained by Wallace Institute at the time said bequest was made. They further allege that the definite charity specified in the testator's will has failed, and that under the doctrine of *cy pres* the court has jurisdiction to effectuate and substitute another mode for the purpose of carrying out the general charitable intention of the testator and can most nearly do so by substituting the public school system of Van Buren, School District No. 42, as beneficiary of the endowment.

A response and cross-complaint were filed by plaintiff to the intervention of the school district and its directors, denying the allegations in said intervention.

A reply and cross-complaint were filed by Gilliam C. Yoes as an individual, and as trustee of Wallace Institute, denying the allegations of the answer of Hendrix College and its trustees.

The interveners filed reply to plaintiff's cross-complaint. Plaintiff also filed reply to the cross-complaint of Yoes.

The chancellor entered a decree holding that, under the *cy pres* rule, Hendrix College was entitled to the assets of the Wallace Institute, it being an educational institution of the same standard and type as the Wallace Institute was authorized to maintain. The chancery court also held, however, that the loans to Van Buren School District were made in good faith without the taint of fraud, and that, when the Wallace Institute board made the loan, it was encouraging education and promoting good morals, and held that the notes and mortgages of the school district should be canceled.

The case is here on appeal.

There was introduced in evidence copies of the acts of the Legislature above-mentioned and also copy of Alfred Wallace's will. All parties concede that the donation by Wallace was a charitable trust. The evidence shows that Hendrix College is located at Conway, Arkansas, about 125 miles from Van Buren; that it is a Methodist College of higher learning authorized to issue degrees and diplomas, and authorized to maintain a preparatory department. The evidence also shows that Hendrix College was incorporated and is now under the care and patronage of the Arkansas Annual Conference of the Methodist Episcopal Church, South. The evidence shows that the school district had borrowed money from the Wallace Institute Board and that it is now indebted to said board in the sum of several thousand dollars. The school directors knew at the time they received the money that it was a trust fund, and knew the facts with reference to the donation by Wallace.

The school district No. 42 is a public school district organized under the laws of the State of Arkansas. Neither the school board nor Hendrix College made any claim to the fund for more than seventy years.

It is first contended by appellee that the State of Arkansas was not a proper party to bring the suit.

In suits for the enforcement of a public trust or charity, the Attorney General is a proper party and may file such suit. 11 C. J. 366 *et seq.* Moreover, no objection was made by any of the parties to the State's bringing the suit, and it was not suggested in the court below that it was not a proper party to bring the suit.

Section 1189 of Crawford & Moses' Digest provides that the defendant may demur when the plaintiff has not legal capacity to sue or where there is a defect of parties plaintiff or defendant. Section 1192 of Crawford & Moses' Digest is as follows: ''When any of the matters enumerated in § 1189 do not appear upon the face of the complaint, the objection may be taken by answer. If no such objection is taken either by demurrer or answer, the defendant shall be deemed to have waived the same except only the objection to the jurisdiction of the court over the subject of the action, and the objection that the complaint does not state facts sufficient to constitute a cause of action.''

The controversy, however, now is between Hendrix College and the school district, each of them claiming under the *cy pres* rule.

The appellee says ''This case ought to be considered by the court strictly as a case between the appellants, Hendrix College and the Methodist Conference, on the one side, and the appellees on the other, just as though it had not been instituted by the State.''

The *cy pres* doctrine, as applied in the United States, is the doctrine of approximation. In its last analysis it is found to be a simple rule of judicial construction designed to aid the court to ascertain and carry out as nearly as may be, the intention of the donor.

''A further application of the doctrine sometimes takes place where the object itself fails. In such case another object of the same general, charitable nature will be substituted by a court of equity to receive the benefit of the charity. And where the donee to whom the gift was made is not in existence at the time the gift takes effect, or has not the capacity to take, the charity

will nevertheless be enforced according to the main charitable intention of the donor. And likewise where the donee is in existence at the time the gift takes effect, and thereafter ceases to exist, the courts will go very far in an endeavor to discover a predominating charitable intention so that the trust may be enforced.'' 5 R. C. L. 368.

There is no difficulty in the present case in determining the intention of the donor. The first act of the Legislature introduced in evidence shows clearly that it was the intention of the lawmakers that the institution should be under the care and patronage of the Arkansas Annual Conference of the Methodist Episcopal Church, South. The corporation was given power by said act to employ teachers, and the faculty was given power to enforce all bylaws and regulations, but they must perform these duties, under the act, by and with the advice and consent of the Annual Conference. The act required the corporation to transmit to the Annual Conference a report of the progress, etc., and provided that the Annual Conference may, as often as they think proper, appoint a committee to visit said school and inspect its condition. The corporation was given power to establish departments and grant diplomas with the consent of the Annual Conference. Under this act all the duties were to be performed under the care and with the advice and consent of the Annual Conference. It is plain from the provisions of the act that the institution was to be managed under the direction of the Methodist Conference.

This act was amended by an act passed and approved January 10, 1857, changing the name from Crawford Institute to Wallace Institute, because Wallace had made a liberal donation to the institution. Wallace died in 1856, and in his will bequeathed $10,000 to endow the Crawford Institute, and the act last mentioned was then passed, changing the name to Wallace Institute. In his will he also bequeathed to the son of his brother, Leonard Wallace, $7,000, $2,000 of which was to be spent in the payment for his education at Crawford Institute, but the clause in the will giving this $7,000 expressly provided that the remaining $5,000 should be used to defray the

expenses incurred in completing his nephew's education at some Methodist College or University of high repute.

On March 8, 1883, the Legislature passed an act naming a board of trustees, and also stated that they should constitute a body corporate and politic under the care and patronage of the Arkansas Annual Conference of the Methodist Episcopal Church, South.

It therefore appears throughout the acts and the will that it was the intention of Wallace that this charity should be devoted to a school controlled by the Methodist Conference. This seems perfectly clear, and we do not think there can be any doubt about the intention of the donor.

It is contended however, that the school district in Van Buren is entitled to the fund under the *cy pres* rule. At the time of the passage of the acts above mentioned and at the time that Wallace made his will we had no system of free schools as we now have. Under the present system persons between the ages of six and twenty-one can receive free education. The statute also provides that the supervision of public schools, and the execution of the laws regulating the same shall be vested in and confided to such officers as may be provided for by the General Assembly.

Under our system a public school could not be operated under the care and management of any church or any conference. Therefore, the Van Buren School District could not comply with the terms of the acts or provisions of the will. The Methodist Conference would have no right to require the public schools to report to it, and no right to manage or control in any way any public school in this State.

We therefore think that it would be impossible for the Van Buren School District to comply with the provisions of the will or of the statutes.

It is contended, however, that the school must be located in Crawford County, or it will not be entitled to the fund. It is true that the donor gave the money to an institute in Crawford County.

In the case of *Schell* v. *Leander Clark College*, 10 Fed. Rep. (2d), the court said: "It is elementary that

charitable trusts will not be permitted to fail if the intention of the creator of such trusts can be carried out and effect be given thereto. It seems to us that the provision by Leander Clark that the college should bear his name was a mere incident to a broader and more generous purpose—that of assisting to found and perpetuate a fund to be so invested and managed as to yield an annual income to be used for the better education of young men and women who desire to take advantage of the opportunity offered by the maintenance of such an institution as the college in question.''

The court also said: ''Where it becomes impracticable or impossible to administer a charitable trust according to its terms, a court of equity will assume jurisdiction thereof, and, in the exercise of its broad general powers, direct the trustees to administer the same or apply the *cy pres* doctrine thereto.''

In the same case it was also said: ''It seems to us clear that the dominant purpose of the gift of Leander Clark was to establish a perpetual charitable trust for the aid and support of Christian education. The fact that he may have believed that Leander Clark College would exist forever is without controlling importance. He made no provisions for a forfeiture or reversion, but instead used language from which we infer a contrary intention.''

In the instant case it seems clear to us that the dominant purpose of the gift of Alfred Wallace was to establish a perpetual trust for the aid and support of an institution under the care and patronage of the Arkansas Annual Conference of the Methodist Episcopal Church, South. Wallace may have believed that Crawford Institute would be established and maintained forever in Crawford County, but he made no provision for forfeiture and unquestionably intended to establish a perpetual charitable trust. It was not provided that the institution should be in Van Buren, but near Van Buren. As a matter of common knowledge, Conway is more accessible to people in Van Buren and Crawford County, than the institute established in 1854, or at the time of the donation in 1856, than most of Crawford County would

have been at that time. In other words, Conway is more accessible to the people of Crawford County than the institute would have been at that time if established in Van Buren.

Moreover, the place of the institution was not the dominant intention of the donor. This is gathered, not only from the manner of making the donation and the acts, but from the additional fact that he expressed an intention that his nephew should be educated in a Methodist College.

It is contended, however, that this action by Hendrix College is barred by the statute of limitations. It is true that, if there is a clear breach of trust by the trustees, yet if the beneficiary has for a long time acquiesced in the misconduct of the trustee with full knowledge of it, a court of equity will not relieve him, but leave him to bear the fruits of his own negligence or infirmity of purpose. But in this case there is no evidence that there was a breach of trust of which the beneficiary had knowledge. As a matter of fact, the evidence all shows that the school board was claiming the money that it had as a loan and did not claim title to it, and did not claim a right to it under the *cy pres* doctrine until this suit was begun.

"As between trustee and *cestui que trust* in the case of an express trust, the statute of limitations has no application, and no length of time is a bar." Perry on Trusts and Trustees, § 863.

"Trusts are not only enforced against those persons who are rightfully possessed of the trust property as trustees, but against all persons who come into possession of the property bound by the trust with notice of such trust. Even a purchaser, still more a volunteer, taking possession of trust property with a notice of the trust will be made a trustee by the court." 26 R. C. L. 1237.

It is agreed by all parties that this is a charitable trust, and this court is committed to the *cy pres* rule, and both parties are claiming under that rule. It is therefore unnecessary to consider any questions except to determine what the dominant intention of the donor was in making the bequest, and whether the beneficiary claiming the property is barred by the statute of limitations.

It follows from what we have said that the decree of the chancery court must be reversed, and the case remanded with directions to enter a decree in favor of Hendrix College, and to enter a judgment against the school district for the amount of the trust property in its possession.

It is so ordered.