THE STATE NATIONAL BANK OF TEXARKANA *v.* BANN.

4-6507 153 S. W. 2d 158

Opinion delivered July 14, 1941.

*James D. Head,* for appellant.

*Arnold & Arnold,* for appellee.

McHANEY, J. The late Michael Meager died testate in Texarkana, Miller county, Arkansas, in 1910. His will was duly admitted to probate. After making provision, in the first paragraph of his will, for the payment of his debts, etc., he devised certain real properties in Texarkana and elsewhere, in paragraph two, to certain persons named, in trust for the purposes set out in paragraph three, as follows: "It shall be the duty of the trustees above named, after my death, to proceed as speedily as possible to convert all of the property conveyed to them by these presents into money, in any event within five years, and out of same, first pay my debts, legal liabilities and funeral expenses aforementioned, and then out of the remainder first purchase a suitable lot in or near said city of Texarkana, and erect thereon a suitable building for a charity hospital, for the treatment of all poor and indigent persons in need of medical attention, and such other persons as the trustees above named, or their successors, shall under rules and regulations permit and that the remainder of said fund after erecting a suitable hospital building, shall be invested by said trustees in such securities as they may deem safe and the interest arising therefrom shall be devoted annually to the maintenance of said hospital.

"I leave it to the discretion of the said trustees or their successors in trust, as to what proportion of the fund which shall be at their disposal, shall be invested for the ground and buildings aforesaid and the furnishings thereof and what proportion shall be used for investment for the maintenance of same."

The remaining trustees were given the power.to fill vacancies in their number caused by death, resignation or refusal to serve. Appellees are the successors to those trustees named in the will. On October 26, 1940,

they entered into a written contract with appellant for the sale to it of lots 11 and 12, block 73, of the city of Texarkana for the sum of $36,000 in cash, by the terms of which it was provided that, in the event counsel for it failed to approve the title and the authority of the trustees to convey, the latter should bring a test suit in chancery which should be prosecuted to this court to determine these questions. Thereupon a deed was executed by appellees conveying the property to appellant, which deed and $36,000 in cash were deposited in escrow, together with the assignment by appellees to appellant of a 99-year lease on said lots to appellant, executed by the testator in his lifetime, to await the outcome of said suit. Appellees brought this action for specific performance. Issue was joined on the title of the trustees, but it is now conceded that they have a good title, and upon their power under the will to convey, under the circumstances hereinafter stated. Trial resulted in a decree for appellees and this appeal followed.

Acting pursuant to the directions contained in the will above quoted, the trustees liquidated all the testator's property, except the two lots here involved and the 99-year lease thereon from which they received an annual rental of $1,800 from appellant plus all general and special taxes thereon. With the funds so received they purchased a property known as the Dale Sanitarium, being four lots with the buildings thereon, and converted it into a 35-bed hospital, equipping same with X-ray and other laboratory facilities needed and necessary in the operation of a hospital. In 1916, they leased the hospital and all its facilities for a period of 25 years to the Sisters of Charity of the Incarnate Word of the Diocese of Galveston, a Texas corporation, organized for the purpose of charity and engaged in the business of operating hospitals for the poor and others in several cities. The reason for this lease was, that, after building and equipping the hospital, they had insufficient funds on hand to maintain it. Said lease expires September 26, 1941, and the lessees have given notice that they will not renew the lease. The complaint alleges and the proof shows that the plant of the hospital is old, inadequate, obsolete, and

so small as to render it impossible for the Sisters of Charity to maintain same and properly carry on their charitable work; that appellants do not have sufficient funds to maintain and operate the hospital even if a proper plant were provided; and that the charitable purposes declared in said will of the testator will be defeated, unless the trustees are permitted to sell these lots and make the donation provided in a contract which they have executed with said Sisters of Charity and with the trustees of Memorial Hospital. In 1939, the public-spirited citizens of Texarkana pledged contributions to what is now known as Trustees of Memorial Hospital, aggregating approximately $150,000, for the purpose of building a new hospital, and the Sisters of Charity will contribute $150,000 for a new hospital if the memorial trustees and appellees will contribute a like sum for the building and equipping thereof. The present site of the hospital is neither suitable nor adequate, and the present plan is to purchase a new site at a cost of about $20,000. The contract provides that appellees should prosecute a suit to final determination to determine the right of appellees to contribute the proceeds of the proposed sale to Trustees of Memorial Hospital to supplement the public subscriptions and the whole to be contributed to said Sisters of Charity for the purpose of constructing and equipping a new hospital on a new site, such site and hospital to belong to said Sisters of Charity. It binds said Sisters of Charity to forthwith prepare plans and specifications for a new hospital to cost not less than $300,000 to be approved by the Sisters. Paragraphs 4 and 5 of the contract provide: ''That the sole obligation of the Sisters is to proceed speedily with the construction and equipment of the hospital and thereafter operate and maintain it in the manner customarily done in other hospitals operated by said Sisters in other towns and cities.

''That the absolute indefeasible title to the new hospital and grounds will be vested in the Sisters of Charity with the sole right to operate the same *free of all conditions, reservations or restrictions,* provided that should the said Sisters cease to operate or maintain the hospital for a period of six months then that the same should be

sold by said Sisters together with the equipment and grounds and that the Trustees of the Memorial Hospital should be reimbursed out of the proceeds of the sale in the proportion of their contribution to the expense incident to the purchase of the lots and the erection and construction of the building.''

Appellant contends that appellees have no power to sell; that by the express terms of the will, they exercised the power given to sell within five years, sold all the property except the lots and lease here involved, set aside a portion for the construction of the hospital and set aside the remaining funds, including this property, for maintenance, as directed in the will; and that, having made an election so to proceed, their power ceased ''and the remainder of the funds must be forever devoted to the maintenance of the hospital contemplated by the testator; they have executed the powers conferred; they have no further right or discretion to make a sale,'' etc. We cannot agree. The undisputed proof shows that the trust will fail unless the dilemma in which appellees find themselves is relieved. The Sisters of Charity will cease to operate the old hospital on the termination of their lease on November 26, 1941. The appellees are unable to provide an adequate plant with their own funds or to even operate the old one. Confronted with this situation, they applied to the chancery court to administer the trust under the *cy pres* doctrine, or the doctrine of approximation, and, pursuant thereto, have formulated the plan in the contract they have entered into with the Sisters of Charity and the so-called Trustees of Memorial Hospital by which they will pool their assets with those of the others, build a charity and pay hospital to be operated by a well known charitable organization, which practically insures its perpetuity.

This court has applied the *cy pres* doctrine in a number of cases. One of the leading cases was written by the late Judge U. M. Rose, in *Fordyce v. Woman's Christian Nat'l Library Association,* 79 Ark. 550, 96 S. W. 155, 7 L. R. A., N. S., 485, where it was said: ''Devises for charitable purposes that are void at law are often sustained in chancery. 2 Story, Eq., § 1170. Where a

literal execution of a charitable devise becomes inexpedient or impracticable, the court will execute it as nearly as it can according to the original purpose. *Id.,* § 1169. The court will supply all defects of conveyances where the donor has capacity to convey, unless the mode of donation contravenes some statutory provision. *Id.,* § 1171.''

Another leading case where this court applied said doctrine to prevent the failure of a charitable trust is *McCarroll* v. *Grand Lodge, etc.,* 154 Ark. 376, 234 S. W. 870. There, one Shirey attempted to create in his will a charitable trust for two purposes. He left a portion of his estate to the Grand Lodge I. O. O. F. to establish and maintain a sanitarium at Hot Springs, and another portion to establish and maintain an orphan's home, both to be under the exclusive control of the Grand Lodge of which he was a member. Due to matters over which Shirey had no control, his estate was insufficient to carry out either purpose. The Grand Lodge owned and operated a sanitarium at Batesville and it determined to use the Shirey trust fund to operate its own hospital at Batesville. To this end it made a contract with McCarroll to sell him its remaining real estate assets and his attorney declined to approve the title and their right to devote the proceeds to the purpose stated. This court sustained the sale and ordered specific performance and held the proceeds could be used as stated under the *cy pres* rule. See, also, *State, ex rel.,* v. *Van Buren Special School Dist. No. 42,* 191 Ark. 1096, 89 S. W. 2d 605.

We think such cases as *Hicks Mem. Christian Assn.* v. *Locke,* 178 Ark. 892, 12 S. W. 2d 866; *Union Nat'l Bank* v. *Kirby,* 189 Ark. 369, 72 S. W. 2d 229; and *Atkinson* v. *Lyle,* 191 Ark. 61, 85 S. W. 2d 715, are not in point.

Here, the appellees are confronted with a situation that the charitable trust of the testator will fail unless some such scheme is adopted as is here proposed. We cannot cause this trust to be executed in the precise manner contemplated by the testator, but we can apply the trust fund to another charity as nearly as possible like that mentioned in the will. The trustees are men of high standing and business ability. They say they cannot longer operate the present hospital with the fund in hand.

856

Mr. Wilson, one of the trustees of the Memorial Hospital, said the "offer of the Sisters of Charity was like manna from Heaven." Appellees own no property except that here involved, the outmoded hospital, and about $1,500 cash in bank. They have no income except the $1,800 per year rent from appellant. It is not difficult to see the impracticability, if not impossibility, of continuing to operate a charity hospital.

Affirmed.