BOSSEN v. WOMAN'S CHRISTIAN NATIONAL LIBRARY ASSOCIATION.

4-9070                                         225 S. W. 2d 336

Opinion delivered December 19, 1949.

*Wootton, Land & Matthews,* for appellant.

*Bessie N. Florence, Sidney S. Taylor* and *David B. Whittington,* for appellee.

MINOR W. MILLWEE, Justice. The question for determination is whether the trustees of a charitable trust may sell land owned and held for library purposes and use the proceeds to construct a library building and turn the building over to a permanent tax supported library organization.

On April 2, 1949, appellee, Woman's Christian National Library Association, accepted appellants' offer to purchase Lots 11 and 12 of Block 127 of the Hot Springs Reservation, Garland County, Arkansas, for the sum of $32,000. The written agreement provided that appellee would furnish an abstract showing good title and convey to appellants by warranty deed. Upon examination of the abstract of title furnished by appellee, the attorneys for appellants refused to approve the title on the ground that appellee held the lands in trust for library purposes and could not convey good title to appellants. Upon appellants' refusal to comply with the terms of their offer to purchase, appellee instituted this suit for specific performance of the sale agreement. In their answer appellants alleged that appellee was holding the lands in trust and could not convey a marketable title to appellants free of the trust and free of liens and encumbrances.

The case was submitted to the chancellor upon the pleadings and a stipulation, which includes the following facts: Appellee is a benevolent corporation organized in 1881 under the provisions of Act 51 of 1875 which, as amended, now appears in Ark. Stats., (1947), § 64-1301 *et seq.* In 1883 appellee acquired the lots in controversy from the United States Government for $100. The government conveyed to appellee in fee simple with no restrictions upon alienation or conveyance. Articles 10 and 11 of appellee's Constitution and Articles of Incorporation provide: "ART. X. Literature. The object of

this association shall be to provide books, newspapers and magazines of such character as will afford instruction and diversion but such books and papers as are demoralizing in their tendency or subversive of religion shall not be admitted.

"ART. XI. Building. The object of this association is to provide a suitable and attractive building where the literature of the Association may be permanently lodged and where suitable lectures on such subjects as are not in field of political or theological controversy and other entertainments not in conflict with the objects of the association may be given."

Appellee has held the lands in trust for library purposes since 1883 during which time it has been financially unable to erect a library building upon said lots. The lots have been rented from time to time and are now under lease to an oil company which maintains a filling station upon the property. Appellee's only income consists of annual rentals of $1,800 from said lots and approximately $600 yearly in library subscriptions and fines. This income has heretofore been used to maintain a public library in rented property, but is insufficient to provide an adequate library for the City of Hot Springs and there is no likelihood of such income being materially increased. Acting through its Board of Directors, appellee has determined that the objectives of its trust could best be carried out by ceasing to operate a general library and using the proceeds of the sale of said lots in the erection of a suitable library building for the purpose of housing the Garland County Free Library.

The Garland County Free Library is operated by the Garland County Library Board, a legally constituted tax supported body organized under Amendment 38 to the Constitution of 1874 and Act 244 of 1927. The Board owns no library building, but a local tax is levied for maintenance of a library and the board is authorized to receive on behalf of the county any gift for building purposes. Appellee has disposed of its books and other personal property to said board.

It also appears that the lots in question are now unsuitable for library purposes and that Garland County owns a suitable site near the courthouse and schools of the city which has been properly dedicated in perpetuity for library purposes and for use by the Garland County Library Board. Appellee and the Garland County Library Board have entered into a written agreement whereby appellee is to sell the two lots and use the proceeds in the erection of a building upon the lots set aside to the Garland County Library Board and, upon completion of said building, to convey same to the Board in trust for library purposes. The Board agrees to properly maintain and operate in said building a free public library for the use of the citizens of Garland County.

The trial court held that appellee could convey to appellants a marketable title to the two lots free of any trust, liens or encumbrances and ordered specific performance of the sales agreement. The court specifically found that the agreement by appellee and the Garland County Library Board represented the only practical manner in which appellee could discharge its trust obligations to provide a suitable library building for the people of Garland County.

Appellee is the same corporation involved in *Woman's Christian Nat'l. Lib. Ass'n.* v. *Fordyce,* 79 Ark. 532, 86 S. W. 417, and *Fordyce* v. *Woman's Christian Nat'l. Lib. Ass'n.,* 79 Ark. 550, 96 S. W. 155, 7 L. R. A., N. S. 485. In the last case cited the court found that the property here involved was held by appellee in the nature of a charitable trust and could not be sold under execution issued on a judgment rendered for the misfeasance or malfeasance of its agents or trustees. Special Justice U. M. Rose, speaking for the court, said: ''The Library Association is organized purely for charitable purposes. It has no capital stock, no provision for making dividends or profits, and is as unselfish as any enterprise can be . . . '' The court further said: ''Being public utilities of a very high order, charities are intimately associated with the State, which exercises over them through its courts a watchful supervision, so that their property,

funds and revenues shall not be diverted to any improper purpose, and that trustees and agents shall perform the duties assigned to them with honesty and fidelity, and for the best advantage of the charitable uses designated by the donor or donors. For these ends the chancery courts have an original and an inherent jurisdiction . . . Devises for charitable purposes that are void at law are often sustained in chancery. 2 Story, Eq., § 1170. Where a literal execution of a charitable devise becomes inexpedient or impracticable, the court will execute it as nearly as it can according to the original purpose. *Id.*, § 1169. The court will supply all defects of conveyances where the donor has capacity to convey unless the mode of donation contravenes some statutory provision. *Id.*, § 1171.''

In 10 Am. Jur. Charities, § 51, it is said: ''The American Law Institute takes the position that the trustee. of a charitable trust can properly sell trust property if a power of sale is conferred in specific words, or such sale is necessary or appropriate to enable the trustee to carry out the purposes of the trust, unless such sale is forbidden in specific words by the terms of the trust or it appears from the terms of the trust that the property was to be retained in *specie*. Even a prohibition against the sale will not prevent the court from authorizing the trustee to make sale, in case of necessity arising from unforeseen change of circumstances, and to apply the proceeds to the purposes of the trust. Thus, where the circumstances existing at the time of the creation of a charitable trust have changed to such an extent that in order to carry out properly the charitable intention of the donor, it is necessary to dispose of the trust property and devote the funds to the acquisition of a more suitable location, a court of equity will authorize the sale of the property.'' See, also, Restatement, Trusts, Vol. 2, §§ 380, 381 and 399; Bogert, Trusts and Trustees, Vol. 2, § 438.

There are many cases from this and other jurisdictions in which courts of equity have applied the *cy pres* doctrine in the execution of a charitable trust or devise. ''The meaning of the doctrine of *cy pres* is that when a

definite function or duty is to be performed, and it cannot be done in exact conformity with the scheme of the person or persons who have provided for it, it must be performed with as close approximation to that scheme as reasonably practicable; and so, of course, it must be enforced, and the reason or basis for the doctrine is to permit the main purpose of the donor of a charitable trust to be carried out as nearly as possible where it cannot be done to the letter." 14 C. J. S., Charities, § 52. Some of the cases in which this court has applied the doctrine are: *McCarroll* v. *Grand Lodge of I. O. O. F. of Arkansas*, 154 Ark. 376, 243 S. W. 870; *State ex rel. Attorney General* v. *Van Buren School District No. 42*, 191 Ark. 1096, 89 S. W. 2d 605; *State National Bank of Texarkana* v. *Bann*, 202 Ark. 850, 153 S. W. 2d 158.

In *McCarroll* v. *Grand Lodge of I. O. O. F. of Arkansas, supra,* this court cited many cases in which the *cy pres* doctrine has been applied and quoted with approval as follows from the case of *Sailors Snug Harbor* v. *Carmody,* 211 N. Y. 286, 105 N. E. 543: "No general rule can be enunciated as to the manner in which the *cy pres* doctrine will be applied. Each case must necessarily depend upon its own peculiar circumstances. Inadequacy of the trust fund to accomplish the purpose of the testator in the manner originally intended may, however, justify the scheme of the charity being changed . . ." In the Van Buren case, *supra,* a Methodist school was made beneficiary of a charitable trust and ceased operation. The *cy pres* doctrine was applied and the court directed the trustees to devote the *corpus* of the trust to another Methodist school.

In *State National Bank of Texarkana* v. *Bann, supra,* the testator directed in his will that the trustees build and operate a hospital. The revenue became insufficient to operate the hospital and this court upheld the chancery court in authorizing the trustees to sell the property and contribute the proceeds to another charitable hospital under the *cy pres* doctrine. The court said: "The appellees are unable to provide an adequate plant with their own funds or to even operate the old one. Con-

fronted with this situation, they applied to the chancery court to administer the trust under the *cy pres* doctrine, or the doctrine of approximation, and, pursuant thereto, have formulated the plan in the contract they have entered into with the Sisters of Charity and the so-called Trustees of Memorial Hospital by which they will pool their assets with those of the others, build a charity and pay hospital to be operated by a well known charitable organization, which practically insures its perpetuity. . . . We cannot cause this trust to be executed in the precise manner contemplated by the testator, but we can apply the trust fund to another charity as nearly as possible like that mentioned in the will . . .''

We have not overlooked the case of *Atkinson* v. *Lyle,* 191 Ark. 61, 85 S. W. 2d 715, in which a divided court held the *cy pres* doctrine inapplicable where the instrument creating the trust contained a positive prohibition against selling or encumbering the property devised. While the holding in that case conflicts in part with the Restatement rule as quoted from Am. Jur., *supra,* the facts are readily distinguishable from those in the instant case. The Constitution and Articles of Incorporation of appellee contain no specific prohibition against sale of the trust property. Moreover, appellee is clothed with broad powers under the provisions of Ark. Stats., (1947), § 64-1306 in the matter of acquiring and disposing of its real and personal property in order to carry out the objects and purposes of the corporation.

We conclude that the trial court correctly authorized the sale of the lots by appellee for the purposes indicated under the *cy pres* doctrine. It is stipulated that appellee is financially unable to maintain a library adequate to community needs and that the subject lands are unsuitable for a library site. If appellee erected a library building on said lots it would be without sufficient funds to operate a library. The Garland County Library Board, has sufficient tax income to maintain an adequate public library and also has a suitable site for a building but is without funds to erect it. The original founders of appellee did not contemplate the changed conditions

which have rendered their lands unsuitable as a library site nor did they foresee the maintenance of libraries from public taxation. The sale of the lands and execution of the agreement with the Library Board will enable appellee to assist in providing a suitable library building for the community and thereby discharge one of its principal objects after 68 years of endeavor.

The decree of the chancery court directing specific performance of the sale agreement between appellee and appellants is, therofore, affirmed.