BART F. VIRDEN, Judge JjA group of the natural heirs of Tom Alexander, namely David Neal, Judy Kruse, John Holleman, Cynthia Frazier, Marianne Massey, Kathy Barber, Alice Boyle, and Evelyn (Brooks) House, Martha Breeden, Robert Brooks, and James Brooks appeal the Sebastian County Circuit Court decision to grant Alexander’s estate to Sparks Regional Medical Center. We affirm in part and reverse in part. I. Facts Tom Alexander executed a will in 1966 when he was twenty-one years old. Though he was unmarried and did not have children at the time he executed the will, Alexander set up a testamentary trust for a wife and any children he might have in the future. The will provided that if he was not survived by a wife or children, then his estate would go to his brother Frank and his mother Ruth. Alexander directed that if his brother and mother |2predeceased him, then Edna Brewer, a family employee, would receive an annuity of $400 per month. All of the named beneficiaries predeceased Alexander; however, Alexander also provided that in the event that occurred, I give, devise and bequeath the remainder of my property as follows: To Sparks Hospital, Fort Smith, Arkansas as a memorial gift to permit the hospital to make necessary improvements or to purchase necessary equipment. Over the years, Sparks Memorial Hospital (SMH), the legal entity that owned and operated Sparks Hospital, went through various changes, including changing its name to Sparks Regional Medical Center (SRMC) in 1970, In 2002 SRMC became a part of Sparks Health Systems (SHS), including different entities operating healthcare facilities in the region. SRMC remained a nonprofit hospital that served the Fort Smith area. In 2009 Health Management Associates, Inc. (HMA), a publicly traded for-profit entity, bought SHS, which included SRMC and its “hospital business.” HMA later became a subsidiary of Community Health Systems (CHS), a for-profit, publicly traded corporation based in Tennessee. HMA remained a separate legal entity from CHS; however, HMA was required to comply with certain restrictions placed on it by CHS, When Alexander died in 2015, a petition to submit the will to probate was filed by Elise Alexander, the personal representative of the estate.[1] The circuit court granted the petition and appointed a personal representative of the estate who then filed a petition to determine heirship. Notice of the petition was sent to Alexander’s possible natural heirs and |sto CHS, SHS, and SRMC. An inventory of Alexander’s estate was performed, and the assets were determined to be $5,661,104. In the multiple briefs filed by the appellants, four main arguments surfaced: (1) Sparks Hospital no longer exists, thus Alexander’s devise must fail and the estate passes in accordance with the intestacy statute; (2) Alexander’s charitable bequest to a local, nonprofit hospital intended to assist in the operation and improvement of the hospital could not be effectuated by granting the residuary estate to SRMC or Fort Smith HMA; (3) alternatively, Alexander exhibited no charitable intent in his devise to Sparks Hospital, therefore the doctrine of cy pres could not be used to reform the -will; and (4) the doctrine of cy pres may only be applied to charitable trusts, and Alexander did not set up such a trust in his will. There was extensive testimony at the trial, including that of Thomas Webb, the executive director of SRMC, who testified about the changes SMH had gone through since 1966. Webb explained that, pursuant to the asset-purchase agreement in 2009, SRMC no longer owns the hospital, it does not have a license to operate a hospital, it does not intend to operate a hospital, and SRMC does not provide any medical care directly to patients. Webb stated that SRMC still is a not-for-profit organization and that “[t]he function of Sparks Regional Medical Center is to continue its mission of providing healthcare and healthcare education for the, .surrounding area of,western Arkansas and eastern Oklahoma." Webb explained that this charitable function, was accomplished, through money; specifically, the $40-$50 million SRMC received in profits from the asset-purchase agreement and from the collection of accounts receivable that existed prior to December 1, 2009. Webb testified that $41 million had been given to the Degen Foundation for the development of an I ¿osteopathic school to train physicians to serve the Fort Smith community. Webb stated that the Degen Foundation-will own the building and that Mercy Health Systems, a nonprofit organization, will operate and manage the facility. Webb explained SRMC’s plan to build the school and purchase equipment for the school is.within the parameters of Alexander’s bequest to “make necessary improvements or tó purchase necessary equipment.” In the proposed findings of fact and conclusions of law, SRMC asserted that Alexander intended to leave his estate first to his mother and brother, both of whom predeceased Alexander. In that event, Alexander intended to make a charitable devise to SMH as a memorial gift that would permit the hospital to make improvements and purchase necessary equipment. Appel-lee argued that SRMC is the same legal entity as SMH, and thus the devise stands. Appellee asserted that, alternatively, if SRMC is not the same entity and Alexander’s bequest cannot be effectuated, then Alexander’s charitable intent may be fulfilled by applying the cy pres doctrine and granting the estate to SRMC. By doing so, the circuit court could fulfill Alexander’s charitable intent as closely as possible, and SRMC suggested several ways the court could direct the estate to be used. In an order entered on June 15, 2016, the circuit court concluded: [I]t is clear that the Testator intended to bequeath his residuary estate as a memorial gift to Sparks Memorial Hospital, (hereinafter “SMH”), the legal entity that owned the nonprofit Sparks Hospital at the time he executed his Will, to specifically benefit the Fort Smith area with improved healthcare services. As such, the Testator strove to support care administered in hospitals rather than-the physical structure itself. The circuit court recounted the history of SMH since 1966 when Alexander executed his will, and it made the following findings of fact. In 1966 SMH was a nonprofit hospital with the charitable purpose of providing healthcare in the Fort Smith area. In 1970 hSMH changed its legal name to Sparks Regional Medical Center, but it remained incorporated as the same nonprofit entity. In 2002 SRMC changed from a nonprofit association to a nonprofit corporation and maintained its charitable purpose; however, SRMC added that its purpose was also “to establish, maintain, and operate a vertically integrated, primary care driven, regional.healthcare delivery system designed to enhance the accessibility, quality, and cost-effective healthcare services in the communities served by the corporation.” SRMC’s purpose and function remained the same despite these changes. In 2009, SRMC sold substantially all of its assets, including the hospital and the “Sparks” name to .Fort Smith Regional Healthcare Foundation. SRMC received between $40 and $50 million in this sale, known as the “asset-purchase agreement,” and the purchase was not a merger. SRMC would collect and retain unpaid accounts. As of the date of the trial, the board of directors for SRMC varied only slightly from the board of directors at the time of Alexander’s death, and SRMC’s mission continues to be “providing healthcare and healthcare education” for the surrounding area. From the profits of the asset-purchase agreement, SRMC has pledged up to $50 million to the Arkansas College of Health Education (ACHE), a corporation founded to create and develop an osteopathic medical school, which would educate osteopathie physicians to render patient care to the Fort Smith community. SRMC had already donated $41 million to the Degen Foundation to build the school, and there were plans to build a $4.1 million clinic across the street from: the school. The Degen Foundation will own the clinic, but it will be operated by Mercy Health Systems, a nonprofit organization. The clinic will be a “fully functioning clinic that is staffed with regular physicians, nurses and staff’ providing services to the public. The funds from 1 (Alexander’s residuary estate could be used to complete the medical school building and purchase necessary medical equipment for the school. The building will have several kinds of functioning labs requiring specialized equipment and a state-of-the-art audio-visual system. Medical care had developed over the years, and services that had traditionally been performed in hospitals were now conducted in clipics. SRMC’s clinic would provide “a variety of hospital-like operations” and SRMC’s mission is to “improve the health status of the residents of the community by initiating and supporting programs which are designed to improve the community’s health and well-being,” thus SRMC continues its charitable purpose through education, research, and patient care. Alexander intended to benefit the Fort Smith area “with improved healthcare services. As such, the Testator strove to support care administered in hospitals rather than the physical structure itself.” The circuit court concluded that although SRMC operates under different articles of incorporation and a different name, it remains a nonprofit corporation capable of carrying out the intent of the Testator, and it is entitled to Alexander’s estate. Alternatively, the circuit court found: Even if the Court were to find that the Testator intended Sparks Hospital, the nonprofit hospital, not the nonprofit entity, to be the beneficiary of his residuary estate, the nonprofit hospital no longer exists. Sparks Hospital, the hospital, is being operated today as a for-profit hospital. As such, this Court may look to the doctrine of cy pres. The circuit court found that cy pres may be applied to Alexander’s bequest. Specifically, it determined that cy pres applies to charitable bequests, that Alexander had the necessary charitable intent as evidenced by his specific devise, that Alexander’s intent was the promotion of health, that Sparks Hospital was a charitable organization that had ceased |7to exist in 2009, that it is impossible to carry out Alexander’s charitable purpose for that reason, and that SRMC is the appropriate cy pres beneficiary. • The circuit court ordered that SRMC must use Alexander’s estate “solely in pursuit of its hospital-like services such as providing medical care and community programs at the medical school or in the clinic owned by SRMC” and that SRMC must memorialize Alexander’s bequest as directed in the Will. The day the order was entered the natural heirs filed notices of appeal. II. Issues on Appeal On appeal, appellants raise two main issues: whether the circuit court erred by finding that Alexander intended to give his estate to a specific legal entity, and whether the circuit court erred by applying cy pres to direct the residuary estate to SRMC. We will address these issues as five distinct points: (1) whether the circuit court erred in finding that Alexander intended to leave his estate to a specific legal entity; (2) whether SRMC continued to exist throughout the changes that took place from 1966 to 2014; (3) whether the doctrine of cy pres may be applied to charitable bequests; (4) whether Alexander had charitable intent when he devised his estate to Sparks Hospital; and (5) whether SRMC is similar enough to SMH to be capable of carrying out Alexander’s intent. We reverse the circuit court’s finding that SRMC is the same entity as SMH. On all other points we affirm. A. Whether Alexander Intended to Leave His Estate to a Specific Legal Entity Appellants argue that the circuit court erred in finding that Alexander intended to bequeath his estate to the legal entity that owned and operated Sparks Hospital, rather than to the hospital itself. We disagree, and we affirm. |aThis case is subject to a de novo standard of review. Covenant Presbytery v. First Baptist Church, 2016 Ark. 138, at 4, 489 S.W.3d 153, 156. The circuit court’s decision should not be reversed unless there is a finding that is clearly erroneous. Id. A finding is clearly erroneous when the appellate court is left with a firm conviction that a mistake has been committed. Id. We give due deference to the superior position of the circuit court to review the credibility of the witnesses. Id. The court’s primary objective when construing the language in a will or trust is to ascertain and effectuate the intent of the testator or settlor as long as that intent is not contrary to the law. Id.; See Bailey v. Delta Tr. & Bank, 359 Ark. 424, 198 S.W.3d 506 (2004). Where the language of a will expressly states the testator’s intention, the intent must be gathered from the four corners of the instrument. Covenant, 2016 Ark. 138, at 4, 489 S.W.3d at 156. It is proper to invoke the rules of construction only when the language is ambiguous. Id. In order to determine the intentions of the testator, consideration must be given to every part of the testamentary instrument. Id. Extrinsic evidence may be received on the issue of the testator’s intent if the terms of the will or trust are ambiguous. Burnett v. First Commercial Tr. Co., 327 Ark. 430, 939 S.W.2d 827 (1997). The circuit court found that “it is clear that the Testator intended to bequeath his residuary estate as a memorial gift to Sparks Memorial Hospital (hereinafter, “SMH”) the legal entity that owned the nonprofit Sparks Hospital.” As SRMC points out, a building cannot make improvements or buy equipment. Throughout the arguments of the parties, the status of Sparks Hospital as a nonprofit entity, an institution operated for charitable purposes, is a key fact that reveals the essential role of SMH, the entity that operated Sparks | ¡Hospital at the time the will was executed. With that in mind, it is impossible to say that we have a firm conviction that the circuit court made a mistake in its finding on this issue. Furthermore, the circuit court referred to the possibility that Alexander simply misnamed the entity he intended to receive the residuary estate. At the time Alexander executed his will Sparks Memorial Hospital was popularly known as “Sparks Hospital.” Citing Lowery v. Jones, 272 Ark. 55, 58, 611 S.W.2d 759, 760 (1981), the circuit found that “for over a century it has been held that a bequest or devise will not fail because of a mere inaccuracy in the designation of the beneficiary.” We find no error in the circuit court’s conclusion that the bequest to “Sparks Hospital” rather than “Sparks Memorial Hospital” could have been a simple misnomer. Giving due deference to the circuit court, we are not left with a firm conviction that the circuit court erred when it determined that Alexander intended for his residuary estate to go to the entity that owned and operated Sparks Hospital. It is a logical conclusion, and we hold that the circuit court successfully effectuated the intent of the testator. B. Whether the Function of SRMC Remained the Same Throughout Its Transitions In its order, the circuit court found that “SRMC is the same legal entity as SMH. It is immaterial that the articles of incorporation of the entity were modified and that the name of the entity was changed from SMH to SRMC since the entity’s purposes and functions remained the same.” On appeal appellants argue that the circuit court erred in finding that the purpose and functions of SRMC remained the same throughout its transition from a nonprofit association to a nonprofit corporation, and from a nonprofit corporation to the modern-day SRMC. We agree with the appellants, and we hold that SRMC is not the | msame entity as the “Sparks Hospital” Alexander named in his will, nor does SRMC have the same function as SMH. In 1970, SMH’s articles of association identified “charity care” as its purpose. Appellants assert that in 2002 SMH “exploded into a ‘vertically integrated, primary care driven, regional healthcare delivery system’” and no longer identified “charity care” as one of its purposes. The 1970 articles of incorporation set forth that one purpose of the association is “to provide such [medical] services as a charitable institution and not for profit[.]” The 2002 articles of incorporation identify SRMC as a “public benefit corporation which shall be governed by the provisions of the Arkansas Nonprofit Corporation Act of 1993” and that SRMC “shall be operated exclusively for charitable, scientific, and educational purposes for the benefit of Sparks Health System, an Arkansas nonprofit eor-poration[.]” Appellants argue that even if SRMC remained the same entity, despite the foregoing changes, then the 2009 sale of substantially all of SRMC’s assets in the asset-purchase agreement to HMA, a publicly traded for-profit entity, is the point at which “ ‘Sparks Hospital, Fort Smith, Arkansas’ predeceased Tom Alexander[.]” We agree that the changes that took place in 2009 are transformative. After the asset-purchase agreement, SRMC no longer operated a hospital, held a hospital license, or provided direct medical care. Instead, SRMC mainly collected unpaid accounts using the Sparks name and transferred those assets to other entities, such as the Degen Foundation, to establish an osteopathic medical school. Appellee argues that the present case is similar to Lowery, swpra, in which the testator -devised property to “Shriners Hospital for Crippled Children, Little Rock, Arkansas” which [ndid not exist. In Lowery, our supreme court affirmed the probate court’s decision that the testator clearly intended a bequest to go to Shri-ners Hospital for Crippled Children, A National Organization, and the testator’s designation in the will was a simple misnomer. The instant case is distinguishable. We previously held that the circuit court did not err in finding that' Alexander’s bequest to Sparks - Hospital, rather than Sparks Memorial Hospital, could have been a misnomer; however, in light of the testimony and evidence discussed above, Lowery is inapplicable to the issues of whether SRMC was the same entity as SMH, and whether the two entities had the same function. By 2009, the differences between SMH and SRMC were more profound and not a simple difference between the names as discussed in Lowery, Because'SRMC is not the same-entity as SMH’ arid does not serve the same purposes set forth in the 1970 articles of incorporation;- Alexander’s devise fails; therefore, we must address the issues regarding cy pres. C. Whether the Doctrine of Cy Pres Applies to Charitable Bequests First, we address appellants’ argument that cy pres applies only to charitable trusts. We disagree, and we affirm the circuit court’s decision that cy pres may be applied to charitable bequests. Cy pres is a.doctrine of approximation, State ex rel. Att’y Gen. v. Van Buren Sch. Dist. No. 42, 191 Ark. 1096, 1102, 89 S.W.2d 605, 607-08.(1936). The equitable doctrine of cy pres “is the principle that equity will, when, a charity originally or later becomes impossible or impracticable of fulfillment, substitute another charitable object which is believed to approach the original purpose as closely as possible. Equity has the power to shape a l ^charitable trust to meet emergencies.” Slade v. Gammill, 226 Ark. 244, 262, 289 S.W.2d 176, 181 (1956). In 2005⅛: the General Assembly codified cy pres as it relates to charitable trusts in 'Arkansas Code Annotated section 28-73-413: [I]f a particular charitable purpose becomes unlawful, impracticable, impossible to achieve, or wasteful: (1) the trust does not fail, in whole or in'part;-"- (2) the trust property does not revert to the settlor or the settlor’s successors in interest; and (3) a court may apply cy pres to modify or terminate’the trust by directing that the trust property be applied or distributed, in whole or in part, in a manner consistent with the settlor’s charitable purposes. There is no indication in section 28-73-413 that the legislature sought to end the application of cy pres to bequests. A legislative act “will not be construed as overruling a principle of common law ‘unless it is made plain by the act that such a change in the established law is intended.’ ” White v. State, 290 Ark. 130, 136, 717 S.W.2d 784, 787 (1986) (citing Starkey Constr., Inc. v. Elcon, 248 Ark. 958, 457 S.W.2d 509 (1970)). In Lowery, - our supreme court upheld the probate court’s decision that the bequest to “Shriner’s Hospital for Crippled Children, Little Rock, Arkansas” should in fact be read as “Shriners Hospital for Crippled Children, a National Organization[.]” 272 Ark. at 58, 611 S.W.2d at 761. The court also held that the probate court’s decision was sustainable as an application of cy pres doctrine: The bulk of the cases applying cy pres involve charitable trusts, rather than bé-quests, as here, and there is some authority that the doctrine is limited to charitable trusts. But the growing weight of authority, and better reasoned, is that the doctrine of cy pres is equally applicable to charitable bequests and devises. Scott on Trusts, Vol. IV, # 348, # 399; Bogert, 2d Edition, Trusts and Trustees, Vol. 2A, # 431; Miller v. Mercantile-Safe Deposit and Trust Co. (1961) 224 Md. 380, 168 A.2d 184. We can see no reason why the logic of cy pres, which was conceived as a method of achieving |1sthe ultimate aim of the donor “as nearly as possible” where his expressed intent for some reason became unattainable, is not equally sound where the bequest is outright rather than in "trust, and this view is consistent with some of the dicta of our own decisions. Fordyce v. Woman’s Christian Nat’l Library Assn., 79 Ark. 550, 96 S.W. 155 (1906); Bosson v. Woman’s Christian National Library Association, 216 Ark. 334, 225 S.W.2d 336 (1949). Lowery, 272 Ark. at 58-59, 611 S.W.2d at 761. The appellants dismiss this language regarding cy pres and charitable bequests as dicta and immaterial to the issue at hand; howevér, we consider the well-reasoned alternative holding of the Arkansas Supreme Court in Lowery to have greater validity, (Dicta consists of statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in'hand, and lacks the force of an adjudication. Burnette v. Perkins & Assocs., 343 Ark. 237, 242, 33 S.W.3d 145, 150 (2000)). The General Assembly was presumably aware of the Lowery case and the existence of the issue of whether cy pres applied to bequests as well as trusts when the statute was enacted in 2005, yet the legislature did not address bequests in its codification of cy prés. In Bosson, 216 Ark. at 338, 225 S.W.2d at 338, the Arkansas Supreme Court acknowledges that cy pres may be applied to devises and trusts alike: “There are many cases from this and other jurisdictions in which courts of equity have applied the cy pres doctrine-in the execution of a charitable trust or devise.” . Though not binding on our courts, the Uniform Law Comment to Ark. Code Ann. § 28-73-413 also offers some guidance on the issue: The doctrine of cy pres is applied not only to trusts, but also to other types of charitable dispositions, including those to charitable corporations. This section does not control dispositions made in nontrust form. However, in formulating rules for | Usuch dispositions, the courts often refer to the principles governing charitable trusts, which would include this Code. Ark. Code Ann. § 28-73-413 ed. notes (Westlaw through 91st Ark. Gen. Assembly). The commentary supports SRMC’s argument that the legislature had no intention of forbidding the application of cy pres to charitable bequests, and it certainly did not expressly do so. The General Assembly has not removed bequests from the realm of cy pres; thus, the circuit court did not err in applying the doctrine to the charitable' devise at issue here." D. Whether Tom Alexander Had Charitable Intent Having affirmed the circuit court’s finding that cy.pres applies to charitable bequests, we now discuss.appellants’ contention that Alexander did not have charitable intent when he made the devise to Sparks Hospital. Appellants argue that Alexander intended the bequest to be a gift and not a charitable devise when he set forth that the residuary estate should go to SMH “as a memorial gift to permit the hospital to make necessary improvements or to purchase necessary equipment.” Appellants argue that without the testator’s declaration of a specific purpose, “such as fighting a disease or helping a certain class of citizens,” the circuit court found charitable intent where there is none. We disagree. The analysis in Covenant, supra, is relevant to our discussion of the instant case. In Covenant, one issue was whether the testator had charitable intent when he created a testamentary trust intended for the management of property and to pay income to life-estate beneficiaries. |1BOur supreme court held: Although First Presbyterian and First Baptist are charitable organizations, the will neither provided that the devise was to serve a charitable purpose nor restricted the churches from using the farm’s proceeds for noncharitable purposes. Rather, a plain reading of the instrument reveals that the only identifiable purpose of the testamentary trust was to administer the life estates, which are not charities. The will directed the trustee to “give, devise and bequeath” the residue of his property to the churches. It then directed the trustee “to sell all real estate in their discretion as soon as the law permit[s], talcing into consideration the existence of the life estates hereinbefore created, and distribution of the proceeds therefrom in accordance with this bequest.” Giving these plain words their ordinary meaning, we find that the only duty Carpenter gave to the trustee was to hold the farmland as a testamentary trust during the life of the lifetime beneficiaries and to thereafter distribute the proceeds of the property to the churches. It does not direct the bank trustee or the churches to ensure that the use of the property be for a purpose benefiting any charity. Our statute limits the application of cy pres to instances where a “particular charitable purpose becomes unlawful, impracticable, impossible to achieve, or wasteful.” Ark. Code Ann. § 28-73-413(a). Since the will identifies no particular charitable purpose, cy pres could not be used to reform the trust. Covenant, 2016 Ark. 138 at 7-8, 489 S.W.3d at 158. In creating a charitable trust the settlor must describe a purpose of substantial public interest. Kohn v. Pearson, 282 Ark. 418, 420, 670 S.W.2d 795, 796 (1984). The finding of Alexander’s charitable intent hinges on the circuit court’s interpretation of his specific bequest that his estate was “a memorial gift to permit the hospital to make necessary improvements or to purchase necessary equipment.” The circuit court found that this bequest fell under the charitable purpose of the “promotion of health.” Arkansas Code Annotated section 28-73-405 identifies “the promotion of health” as a charitable purpose, and the necessity of up-to-date medical equipment and facilities in a hospital for the promotion of health is self-evident. Unlike the testator in Covenant, Alexander set forth a specific use for his estate, and the court’s reasoning concerning the underlying charitable intent of that bequest — to promote public health — is not clearly erroneous. hfiE. Whether SRMC is Capable of Carrying Out Alexander’s Charitable Intent Appellants argue that the circuit court erred when it found that SRMC was the appropriate cy pres beneficiary of Alexander’s bequest because SRMC is not similar to SMH and thus incapable of carrying out any charitable intent. While we agree that SRMC is not the same entity as SMH, we disagree that SRMC is not the appropriate cy pres beneficiary and affirm. Appellants assert that [t]here is nothing in the will that indicates that Tom Alexander intended for his estate to benefit an osteopathic medical school. The circuit court’s decision was heavily based on the circuit court’s conclusion that Tom Alexander intended to support care administered in hospitals rather than the physical structure itself. The circuit court ordered SRMC to use the funds from the estate “solely in pursuit of its hospital-like services such as providing medical care and community programs at the medical school or in the clinic owned by SRMC in Fort Smith, Arkansas, and to memorialize the accomplishments in the name of Tom Alexander!!]” The circuit court referred to the following relevant findings to support its decision that SRMC is the appropriate' cy pres beneficiary. SRMC executive director Thomas Webb testified that SRMC continues SMH’s mission of “promoting healthcare through money.” From the profits of the asset-purchase agreement and SRMC’s collection of past-due accounts, SRMC has pledged up to $50 million to the Degen Foundation to create and develop an osteopathic medical school. The purpose of the osteopathic school is to train physicians who will, in turn, provide healthcare to the Fort Smith community. The clinic will be across the street from the medical school, which will be built and owned by the De-gen Foundation, and will be managed by the nonprofit organization, Mercy Health Systems, will be “a fully | ^functioning clinic that is staffed with regular physicians, nurses, and staff that will be providing services to our public” and will have “full functioning treatment rooms.” SRMC pledged that if the residuary estate is granted to it, SRMC will direct the funds toward completion of the medical school building and purchasing necessary medical equipment for the medical school. SRMC also suggested that the funds could be used to build the clinic to provide healthcare to the community. Clinics now provide care that was once relegated to hospitals, and Alexander “sought to support care administered in hospitals rather than the physical structure itself.” SRMC fulfills a charitable purpose by educating and training doctors, conducting medical research, and providing patient care. We have upheld the circuit court’s decision that the entity that operated Sparks Hospital was the intended object of Alexander’s bequest and that Alexander had the charitable intent to promote public health when he made the devise to Sparks Hospital. It follows that we find no error in the circuit court’s decision that Alexander’s estate should be used to further the patient-care and community programs that a new clinic will provide to the Fort Smith community. The circuit court reasonably surmised that Alexander intended to help provide medical care and promote the good health of the people in the surrounding area with his express direction that the residuary of his estate should be used to purchase necessary equipment and make necessary improvements. The circuit court fashioned a use for the funds as near to Alexander’s intent as possible under the circumstances, and on this point we affirm. Affirmed in part; reversed in part. Gladwin, Glover and Whiteaker, JJ., agree. Hixson and Brown, JJ., dissent. . David Neal replaced Elise Alexander as representative through a joint petition of the parties.