SLOAN, TRUSTEE *v.* ROBERT JACK POST No. 1322 VETERANS OF FOREIGN WARS.

4-9464                                                      239 S. W. 2d 591

Opinion delivered May 14, 1951.

*Lonnie Batchelor* and *Ralph W. Robinson,* for appellant.

*Rains & Rains,* for appellee.

GRIFFIN SMITH, Chief Justice. This is a friendly suit to settle controversies regarding funds publicly donated for a purpose now impossible of fulfillment. It is controversial in the sense that each group of litigants,

while differing, has proceeded in good faith, but was unwilling, without judicial sanction, to yield to the other's construction of asserted rights.

Early in 1946 committees—appointed, upon the one hand, by Robert Jack Post No. 1322, Veterans of Foreign Wars, and upon the other by the local American Legion Post—asked citizens of Fort Smith, Van Buren, and nearby communities to donate money for construction of a Veterans Hut in Van Buren. It is undisputed that when solicitations were made there were assurances that the Hut would be available to all veterans, regardless of membership in any organization. As money was received it was turned over to Charles Matlock—one of three trustees—who deposited it in a Van Buren bank. The account is designated Veterans Building Fund. It amounts to $1,910, including $110 realized from a carnival sponsored by the Legion.

The suit was filed by Robert Jack Post, hereafter referred to as V. F. W. The Veterans Building Fund, as a personification, was listed as a defendant. Other defendants were Ed Sloan, Charles Matlock, and Lonnie Batchelor, trustees, and the depository bank. The American Legion Post, as such, was not named, but its activities and the interest it claimed in the deposit were set out. Prayer of the complaint was that the bank be directed to turn the money over to the V.F.W. quartermaster for use in erecting a Hut conforming (as to use) to representations made when donations were solicited; but in the alternative it was asked that the court determine what rights the plaintiff had in the fund.

The trustees in answering denied that the money could not be utilized as the donors intended. Inferentially, however, the answer admitted that a new Hut would not be built, but that in the alternative, and as substantial performance of the trust, a plan that should prove satisfactory to all could be adopted whereunder an existing building could be acquired, "title thereto to be taken and held in such manner that its utility will be available to all veterans, as originally intended."

The complaint, in asking that the money be paid to the V. F. W. quartermaster, concedes that if the plaintiff prevails the fund will be used "for the purpose of erecting a Hut or building for the veterans of foreign Wars, which is the next closest purpose for which the said money was solicited," thereby tacitly conceding that the *actual* intent must to some extent miscarry.

What is referred to as an agreed statement of facts appears in the record, but it is not signed by either party. Included in the statement were minutes of a meeting of V. F. W. held February 4, 1946. A committee reported "on the building of the Hut with the American Legion." This was followed by adoption of a tentative plan to "go on with the Legion." Minutes of Legion meetings were copied showing that all of the activities, whether by V. F. W. or the Legion, contemplated a Hut for joint accommodation of the two organizations, but available to all veterans, irrespective of membership.

In 1949 V. F. W. demanded of the Legion "an accounting and division" of the money. This, however, was coupled with the assertion that restitution should be made, "in keeping with the reputation and respect which the V. F. W. now enjoys." Refusal of the trustees to acquiesce in this demand resulted in the present suit. The chancellor rejected plaintiff's claim to all of the fund under the *cy pres* doctrine, (a contention advanced during trial but not expressly asserted in the complaint) but thought that the contending parties stood on a parity because of equal participation in making solicitations,— the term "parties" having reference to V. F. W. and the American Legion as distinguished from the trustees and the bank. It was decreed, first, that the costs of the suit be paid from the fund, and secondly that net proceeds be divided equally between the two organizations.

Uncontradicted testimony was that V. F. W. membership is restricted to veterans who saw foreign service, while any veteran, regardless of foreign service, may be a member of the Legion. Less than a third of the known

veterans in Crawford county affiliate with either organization.

Witnesses who seemingly spoke for the Legion as a body testified to plans for purchasing an old structure and converting it into suitable quarters. Appellee (the cross-appellant here) refers to the structure as a "one-story ramshackle building used for many years for storage of berry crates." V. F. W. insists that it will construct quarters in all respects suitable for use of veterans, and that in addition the building may serve as a community center. The cross-appeal is from that part of the decree denying V. F. W.'s contention at the trial that its substituted plans were better in point of veteran requirements than those offered by the Legion, and that the *cy pres* doctrine ought to prevail.

The briefs are in accord regarding the nature of the trust: that is, the donations were made for a public as distinguished from a private or self-serving purpose. We agree that insofar as the several trust classifications are to be considered, rules governing charitable trusts are applicable, although neither litigant as an organization can be regarded by the public or in law as coming within the sphere of philanthropy. No responsible spokesman for veterans has ever urged attention upon a basis other than patriotic considerations—consideration responsive to impulses of gratitude for services actually performed, hence the term "charity" as applied to this litigation is no more than the common denominator in the law of trusts; and nothing else is implied.

A point that, on appeal, seems to have been subordinated to the claims of the litigating parties is the dominant purpose the donors had in mind when they contributed to the fund. There is nothing in the record showing that any distinction was made between interests of V. F. W. and the American Legion. Testimony and the agreed statement justify a finding that the two agencies began harmoniously and that donations were made in the belief that when the Hut was built it would be accessible to veterans generally. But now, if utility is restricted to those who saw service abroad, or if the

range is broadened and a community center is provided, the paramount purpose visualized by those who gave will have been substantially altered. The same is true if the fund is divided between the contending groups.

In some respects the principle here is analogous to *State* v. *Van Buren School District,* 191 Ark. 1096, 89 S. W. 2d 605. There the school district was required to repay money it had borrowed from a fund bequeathed in trust to an established place of learning known as the Crawford Institute. The will was executed in 1856 and it designated trustees who were to administer the fund within terms of the gift and as the Institute's needs required. It ceased to function because of Civil War difficulties and was not reëstablished; but, the purpose being educational, the trustees felt that loans to the district would not be inconsistent with the donor's objective. The Institute was created by a legislative Act in 1854 as a corporate entity under the care and patronage of the Methodist Episcopal Church, South. A broader factual understanding may be had by reading the opinion of Mr. Justice MEHAFFEY, delivered in 1936. The claims of Hendrix College were upheld in a finding that the donor had established a perpetual trust to support an institution of learning under supervision of the Church.

In discussing the *cy pres* doctrine the opinion quotes from *Schell* v. *Leander Clark College,* 10 Fed. 2d 542. The rule there announced and discussed by Judge SCOTT is pertinent here. Where it becomes impracticable or impossible [said the Judge] to administer a charitable trust according to its terms, "a court of equity will assume jurisdiction thereof, and, in the exercise of its broad general powers, direct the trustees to administer the same, [or the court will] apply the *cy pres* doctrine thereto."

The doctrine is one of approximation and is never resorted to unless difficulties in complying with the trust according to its terms are so great as to become administratively impracticable; but the general objective is never lost sight of.

In the instant case neither litigant disputes the general proposition that those who donated did so under representations that the Hut would be built for the convenience and accommodation of all veterans.

We think the court erred in recognizing the claim of either litigant. When the undisputed testimony revealed construction programs substantially at variance with representations made to donors, and an unwillingness by the two groups to compose their differences and perform the implied contract, the trust failed, and the court was without power to apply equity in respect of V. F. W. and the Legion when dominant rights of contributors intervened.

The item of $110 realized from the Legion-sponsored carnival is basically different from the donations and can not be refunded. The cost of this suit may be paid from it and the balance will be subject to division. All contributions, however, should be repaid.

Reversed.