SLIP OPINION



# ARKANSAS COURT OF APPEALS

DIVISIONS II &III
No. CV-16-805

| | |
|---|---|
| IN THE MATTER OF THE ESTATE OF TOM ALEXANDER, DECEASED, AND DAVID NEAL, ET AL.<br><br>APPELLANTS<br><br>V.<br><br>SPARKS REGIONAL MEDICAL CENTER<br><br>APPELLEE | **Opinion Delivered:** November 8, 2017<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NO. 66FPR-15-201]<br><br>HONORABLE JIM D. SPEARS, JUDGE<br><br>AFFIRMED IN PART; REVERSED IN PART |

## BART F. VIRDEN, Judge

A group of the natural heirs of Tom Alexander, namely David Neal, Judy Kruse, John Holleman, Cynthia Frazier, Marianne Massey, Kathy Barber, Alice Boyle, and Evelyn (Brooks) House, Martha Breeden, Robert Brooks, and James Brooks appeal the Sebastian County Circuit Court decision to grant Alexander's estate to Sparks Regional Medical Center. We affirm in part and reverse in part.

### I. *Facts*

Tom Alexander executed a will in 1966 when he was twenty-one years old. Though he was unmarried and did not have children at the time he executed the will, Alexander set up a testamentary trust for a wife and any children he might have in the future. The will provided that if he was not survived by a wife or children, then his estate would go to his brother Frank and his mother Ruth. Alexander directed that if his brother and mother

predeceased him, then Edna Brewer, a family employee, would receive an annuity of $400

per month. All of the named beneficiaries predeceased Alexander; however, Alexander also

provided that in the event that occurred,

> I give, devise and bequeath the remainder of my property as follows: To Sparks Hospital, Fort Smith, Arkansas as a memorial gift to permit the hospital to make necessary improvements or to purchase necessary equipment.

Over the years, Sparks Memorial Hospital (SMH), the legal entity that owned and

operated Sparks Hospital, went through various changes, including changing its name to

Sparks Regional Medical Center (SRMC) in 1970. In 2002 SRMC became a part of Sparks

Health Systems (SHS), including different entities operating health-care facilities in the

region. SRMC remained a nonprofit hospital that served the Fort Smith area. In 2009

Health Management Associates, Inc. (HMA), a publicly traded for-profit entity, bought

SHS, which included SRMC and its "hospital business." HMA later became a subsidiary of

Community Health Systems (CHS), a for-profit, publicly traded corporation based in

Tennessee. HMA remained a separate legal entity from CHS; however, HMA was required

to comply with certain restrictions placed on it by CHS.

When Alexander died in 2015, a petition to submit the will to probate was filed by

Elise Alexander, the personal representative of the estate.[1] The circuit court granted the

petition and appointed a personal representative of the estate who then filed a petition to

determine heirship. Notice of the petition was sent to Alexander's possible natural heirs and

---

[1]David Neal replaced Elise Alexander as representative through a joint petition of the parties.

to CHS, SHS, and SRMC. An inventory of Alexander's estate was performed, and the assets were determined to be $5,661,104.

In the multiple briefs filed by the appellants, four main arguments surfaced: (1) Sparks Hospital no longer exists, thus Alexander's devise must fail and the estate passes in accordance with the intestacy statute; (2) Alexander's charitable bequest to a local, nonprofit hospital intended to assist in the operation and improvement of the hospital could not be effectuated by granting the residuary estate to SRMC or Fort Smith HMA; (3) alternatively, Alexander exhibited no charitable intent in his devise to Sparks Hospital, therefore the doctrine of cy pres could not be used to reform the will; and (4) the doctrine of cy pres may only be applied to charitable trusts, and Alexander did not set up such a trust in his will.

There was extensive testimony at the trial, including that of Thomas Webb, the executive director of SRMC, who testified about the changes SMH had gone through since 1966. Webb explained that, pursuant to the asset-purchase agreement in 2009, SRMC no longer owns the hospital, it does not have a license to operate a hospital, it does not intend to operate a hospital, and SRMC does not provide any medical care directly to patients. Webb stated that SRMC still is a not-for-profit organization and that "[t]he function of Sparks Regional Medical Center is to continue its mission of providing healthcare and healthcare education for the surrounding area of western Arkansas and eastern Oklahoma." Webb explained that this charitable function was accomplished through money; specifically, the $40-$50 million SRMC received in profits from the asset-purchase agreement and from the collection of accounts receivable that existed prior to December 1, 2009. Webb testified that $41 million had been given to the Degen Foundation for the development of an

osteopathic school to train physicians to serve the Fort Smith community. Webb stated that the Degen Foundation will own the building and that Mercy Health Systems, a nonprofit organization, will operate and manage the facility. Webb explained SRMC's plan to build the school and purchase equipment for the school is within the parameters of Alexander's bequest to "make necessary improvements or to purchase necessary equipment."

In the proposed findings of fact and conclusions of law, SRMC asserted that Alexander intended to leave his estate first to his mother and brother, both of whom predeceased Alexander. In that event, Alexander intended to make a charitable devise to SMH as a memorial gift that would permit the hospital to make improvements and purchase necessary equipment. Appellee argued that SRMC is the same legal entity as SMH, and thus the devise stands. Appellee asserted that, alternatively, if SRMC is not the same entity and Alexander's bequest cannot be effectuated, then Alexander's charitable intent may be fulfilled by applying the cy pres doctrine and granting the estate to SRMC. By doing so, the circuit court could fulfill Alexander's charitable intent as closely as possible, and SRMC suggested several ways the court could direct the estate to be used.

In an order entered on June 15, 2016, the circuit court concluded:

> [I]t is clear that the Testator intended to bequeath his residuary estate as a memorial gift to Sparks Memorial Hospital, (hereinafter "SMH"), the legal entity that owned the nonprofit Sparks Hospital at the time he executed his Will, to specifically benefit the Fort Smith area with improved healthcare services. As such, the Testator strove to support care administered in hospitals rather than the physical structure itself.

The circuit court recounted the history of SMH since 1966 when Alexander executed his will, and it made the following findings of fact. In 1966 SMH was a nonprofit hospital with the charitable purpose of providing healthcare in the Fort Smith area. In 1970

SMH changed its legal name to Sparks Regional Medical Center, but it remained incorporated as the same nonprofit entity. In 2002 SRMC changed from a nonprofit association to a nonprofit corporation and maintained its charitable purpose; however, SRMC added that its purpose was also "to establish, maintain, and operate a vertically integrated, primary care driven, regional healthcare delivery system designed to enhance the accessibility, quality, and cost-effective healthcare services in the communities served by the corporation." SRMC's purpose and function remained the same despite these changes. In 2009, SRMC sold substantially all of its assets, including the hospital and the "Sparks" name to Fort Smith Regional Healthcare Foundation. SRMC received between $40 and $50 million in this sale, known as the "asset-purchase agreement," and the purchase was not a merger. SRMC would collect and retain unpaid accounts. As of the date of the trial, the board of directors for SRMC varied only slightly from the board of directors at the time of Alexander's death, and SRMC's mission continues to be "providing healthcare and healthcare education" for the surrounding area. From the profits of the asset-purchase agreement, SRMC has pledged up to $50 million to the Arkansas College of Health Education (ACHE), a corporation founded to create and develop an osteopathic medical school, which would educate osteopathic physicians to render patient care to the Fort Smith community. SRMC had already donated $41 million to the Degen Foundation to build the school, and there were plans to build a $4.1 million clinic across the street from the school. The Degen Foundation will own the clinic, but it will be operated by Mercy Health Systems, a nonprofit organization. The clinic will be a "fully functioning clinic that is staffed with regular physicians, nurses and staff" providing services to the public. The funds from

Alexander's residuary estate could be used to complete the medical school building and purchase necessary medical equipment for the school. The building will have several kinds of functioning labs requiring specialized equipment and a state-of-the-art audio-visual system. Medical care had developed over the years, and services that had traditionally been performed in hospitals were now conducted in clinics. SRMC's clinic would provide "a variety of hospital-like operations" and SRMC's mission is to "improve the health status of the residents of the community by initiating and supporting programs which are designed to improve the community's health and well-being," thus SRMC continues its charitable purpose through education, research, and patient care. Alexander intended to benefit the Fort Smith area "with improved healthcare services. As such, the Testator strove to support care administered in hospitals rather than the physical structure itself."

The circuit court concluded that although SRMC operates under different articles of incorporation and a different name, it remains a nonprofit corporation capable of carrying out the intent of the Testator, and it is entitled to Alexander's estate. Alternatively, the circuit court found:

> Even if the Court were to find that the Testator intended Sparks Hospital, the nonprofit hospital, not the nonprofit entity, to be the beneficiary of his residuary estate, the nonprofit hospital no longer exists. Sparks Hospital, the hospital, is being operated today as a for-profit hospital. As such, this Court may look to the doctrine of cy pres.

The circuit court found that cy pres may be applied to Alexander's bequest. Specifically, it determined that cy pres applies to charitable bequests, that Alexander had the necessary charitable intent as evidenced by his specific devise, that Alexander's intent was the promotion of health, that Sparks Hospital was a charitable organization that had ceased

to exist in 2009, that it is impossible to carry out Alexander's charitable purpose for that reason, and that SRMC is the appropriate cy pres beneficiary.

The circuit court ordered that SRMC must use Alexander's estate "solely in pursuit of its hospital-like services such as providing medical care and community programs at the medical school or in the clinic owned by SRMC" and that SRMC must memorialize Alexander's bequest as directed in the Will.

The day the order was entered the natural heirs filed notices of appeal.

## II. *Issues on Appeal*

On appeal, appellants raise two main issues: whether the circuit court erred by finding that Alexander intended to give his estate to a specific legal entity, and whether the circuit court erred by applying cy pres to direct the residuary estate to SRMC. We will address these issues as five distinct points: (1) whether the circuit court erred in finding that Alexander intended to leave his estate to a specific legal entity; (2) whether SRMC continued to exist throughout the changes that took place from 1966 to 2014; (3) whether the doctrine of cy pres may be applied to charitable bequests; (4) whether Alexander had charitable intent when he devised his estate to Sparks Hospital; and (5) whether SRMC is similar enough to SMH to be capable of carrying out Alexander's intent. We reverse the circuit court's finding that SRMC is the same entity as SMH. On all other points we affirm.

A. Whether Alexander Intended to Leave His Estate to a Specific Legal Entity

Appellants argue that the circuit court erred in finding that Alexander intended to bequeath his estate to the legal entity that owned and operated Sparks Hospital, rather than to the hospital itself. We disagree, and we affirm.

This case is subject to a de novo standard of review. *Covenant Presbytery v. First Baptist Church*, 2016 Ark. 138, at 4, 489 S.W.3d 153, 156. The circuit court's decision should not be reversed unless there is a finding that is clearly erroneous. *Id.* A finding is clearly erroneous when the appellate court is left with a firm conviction that a mistake has been committed. *Id.* We give due deference to the superior position of the circuit court to review the credibility of the witnesses. *Id.*

The court's primary objective when construing the language in a will or trust is to ascertain and effectuate the intent of the testator or settlor as long as that intent is not contrary to the law. *Id.*; *See Bailey v. Delta Tr. & Bank*, 359 Ark. 424, 198 S.W.3d 506 (2004). Where the language of a will expressly states the testator's intention, the intent must be gathered from the four corners of the instrument. *Covenant*, 2016 Ark. 138, at 4, 489 S.W.3d at 156. It is proper to invoke the rules of construction only when the language is ambiguous. *Id.* In order to determine the intentions of the testator, consideration must be given to every part of the testamentary instrument. *Id.* Extrinsic evidence may be received on the issue of the testator's intent if the terms of the will or trust are ambiguous. *Burnett v. First Commercial Tr. Co.*, 327 Ark. 430, 939 S.W.2d 827 (1997).

The circuit court found that "it is clear that the Testator intended to bequeath his residuary estate as a memorial gift to Sparks Memorial Hospital (hereinafter, "SMH") the legal entity that owned the nonprofit Sparks Hospital." As SRMC points out, a building cannot make improvements or buy equipment. Throughout the arguments of the parties, the status of Sparks Hospital as a nonprofit entity, an institution operated for charitable purposes, is a key fact that reveals the essential role of SMH, the entity that operated Sparks

Hospital at the time the will was executed. With that in mind, it is impossible to say that we have a firm conviction that the circuit court made a mistake in its finding on this issue.

Furthermore, the circuit court referred to the possibility that Alexander simply misnamed the entity he intended to receive the residuary estate. At the time Alexander executed his will Sparks Memorial Hospital was popularly known as "Sparks Hospital." Citing *Lowery v. Jones*, 272 Ark. 55, 58, 611 S.W.2d 759, 760 (1981), the circuit found that "for over a century it has been held that a bequest or devise will not fail because of a mere inaccuracy in the designation of the beneficiary." We find no error in the circuit court's conclusion that the bequest to "Sparks Hospital" rather than "Sparks Memorial Hospital" could have been a simple misnomer.

Giving due deference to the circuit court, we are not left with a firm conviction that the circuit court erred when it determined that Alexander intended for his residuary estate to go to the entity that owned and operated Sparks Hospital. It is a logical conclusion, and we hold that the circuit court successfully effectuated the intent of the testator.

B. Whether the Function of SRMC Remained the Same Throughout Its Transitions

In its order, the circuit court found that "SRMC is the same legal entity as SMH. It is immaterial that the articles of incorporation of the entity were modified and that the name of the entity was changed from SMH to SRMC since the entity's purposes and functions remained the same." On appeal appellants argue that the circuit court erred in finding that the purpose and functions of SRMC remained the same throughout its transition from a nonprofit association to a nonprofit corporation, and from a nonprofit corporation to the modern-day SRMC. We agree with the appellants, and we hold that SRMC is not the

same entity as the "Sparks Hospital" Alexander named in his will, nor does SRMC have the same function as SMH.

In 1970, SMH's articles of association identified "charity care" as its purpose. Appellants assert that in 2002 SMH "exploded into a 'vertically integrated, primary care driven, regional healthcare delivery system'" and no longer identified "charity care" as one of its purposes. The 1970 articles of incorporation set forth that one purpose of the association is "to provide such [medical] services as a charitable institution and not for profit[.]" The 2002 articles of incorporation identify SRMC as a "public benefit corporation which shall be governed by the provisions of the Arkansas Nonprofit Corporation Act of 1993" and that SRMC "shall be operated exclusively for charitable, scientific, and educational purposes for the benefit of Sparks Health System, an Arkansas nonprofit corporation[.]"

Appellants argue that even if SRMC remained the same entity, despite the foregoing changes, then the 2009 sale of substantially all of SRMC's assets in the asset-purchase agreement to HMA, a publicly traded for-profit entity, is the point at which "'Sparks Hospital, Fort Smith, Arkansas' predeceased Tom Alexander[.]" We agree that the changes that took place in 2009 are transformative. After the asset-purchase agreement, SRMC no longer operated a hospital, held a hospital license, or provided direct medical care. Instead, SRMC mainly collected unpaid accounts using the Sparks name and transferred those assets to other entities, such as the Degen Foundation, to establish an osteopathic medical school.

Appellee argues that the present case is similar to *Lowery*, *supra*, in which the testator devised property to "Shriners Hospital for Crippled Children, Little Rock, Arkansas" which

10

did not exist. In *Lowery*, our supreme court affirmed the probate court's decision that the testator clearly intended a bequest to go to Shriners Hospital for Crippled Children, A National Organization, and the testator's designation in the will was a simple misnomer. The instant case is distinguishable. We previously held that the circuit court did not err in finding that Alexander's bequest to Sparks Hospital, rather than Sparks Memorial Hospital, could have been a misnomer; however, in light of the testimony and evidence discussed above, *Lowery* is inapplicable to the issues of whether SRMC was the same entity as SMH, and whether the two entities had the same function. By 2009, the differences between SMH and SRMC were more profound and not a simple difference between the names as discussed in *Lowery*.

Because SRMC is not the same entity as SMH and does not serve the same purposes set forth in the 1970 articles of incorporation, Alexander's devise fails; therefore, we must address the issues regarding cy pres.

### C. Whether the Doctrine of Cy Pres Applies to Charitable Bequests

First, we address appellants' argument that cy pres applies only to charitable trusts. We disagree, and we affirm the circuit court's decision that cy pres may be applied to charitable bequests.

Cy pres is a doctrine of approximation. *State ex rel. Att'y Gen. v. Van Buren Sch. Dist. No. 42*, 191 Ark. 1096, 1102, 89 S.W.2d 605, 607–08 (1936). The equitable doctrine of cy pres "is the principle that equity will, when a charity originally or later becomes impossible or impracticable of fulfillment, substitute another charitable object which is believed to approach the original purpose as closely as possible. Equity has the power to shape a

11

charitable trust to meet emergencies." *Slade v. Gammill*, 226 Ark. 244, 252, 289 S.W.2d

176, 181 (1956).

In 2005, the General Assembly codified cy pres as it relates to charitable trusts in

Arkansas Code Annotated section 28-73-413:

> [I]f a particular charitable purpose becomes unlawful, impracticable, impossible to achieve, or wasteful:
> (1) the trust does not fail, in whole or in part;
> (2) the trust property does not revert to the settlor or the settlor's successors in interest; and
> (3) a court may apply cy pres to modify or terminate the trust by directing that the trust property be applied or distributed, in whole or in part, in a manner consistent with the settlor's charitable purposes.

There is no indication in section 28-73-413 that the legislature sought to end the

application of cy pres to bequests. A legislative act "will not be construed as overruling a

principle of common law 'unless it is made plain by the act that such a change in the

established law is intended.'" *White v. State*, 290 Ark. 130, 136, 717 S.W.2d 784, 787 (1986)

(citing *Starkey Constr., Inc. v. Elcon*, 248 Ark. 958, 457 S.W.2d 509 (1970)).

In *Lowery*, our supreme court upheld the probate court's decision that the bequest to

"Shriner's Hospital for Crippled Children, Little Rock, Arkansas" should in fact be read as

"Shriners Hospital for Crippled Children, a National Organization[.]" 272 Ark. at 58, 611

S.W.2d at 761. The court also held that the probate court's decision was sustainable as an

application of cy pres doctrine:

> The bulk of the cases applying cy pres involve charitable trusts, rather than bequests, as here, and there is some authority that the doctrine is limited to charitable trusts. But the growing weight of authority, and better reasoned, is that the doctrine of cy pres is equally applicable to charitable bequests and devises. Scott on Trusts, Vol. IV, # 348, # 399; Bogert, 2d Edition, Trusts and Trustees, Vol. 2A, # 431; *Miller v. Mercantile-Safe Deposit and Trust Co.* (1961) 224 Md. 380, 168 A.2d 184. We can see no reason why the logic of cy pres, which was conceived as a method of achieving

the ultimate aim of the donor "as nearly as possible" where his expressed intent for some reason became unattainable, is not equally sound where the bequest is outright rather than in trust, and this view is consistent with some of the dicta of our own decisions. *Fordyce v. Woman's Christian Nat'l Library Assn.*, 79 Ark. 550, 96 S.W. 155 (1906); *Bosson v. Woman's Christian National Library Association*, 216 Ark. 334, 225 S.W.2d 336 (1949).

*Lowery*, 272 Ark. at 58–59, 611 S.W.2d at 761.

The appellants dismiss this language regarding cy pres and charitable bequests as dicta and immaterial to the issue at hand; however, we consider the well-reasoned alternative holding of the Arkansas Supreme Court in *Lowery* to have greater validity. (Dicta consists of statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand, and lacks the force of an adjudication. *Burnette v. Perkins & Assocs.*, 343 Ark. 237, 242, 33 S.W.3d 145, 150 (2000)).

The General Assembly was presumably aware of the *Lowery* case and the existence of the issue of whether cy pres applied to bequests as well as trusts when the statute was enacted in 2005, yet the legislature did not address bequests in its codification of cy pres. In *Bosson*, 216 Ark. at 338, 225 S.W.2d at 338, the Arkansas Supreme Court acknowledges that cy pres may be applied to devises and trusts alike: "There are many cases from this and other jurisdictions in which courts of equity have applied the cy pres doctrine in the execution of a charitable trust or devise."

Though not binding on our courts, the Uniform Law Comment to Ark. Code Ann. § 28-73-413 also offers some guidance on the issue:

> The doctrine of cy pres is applied not only to trusts, but also to other types of charitable dispositions, including those to charitable corporations. This section does not control dispositions made in nontrust form. However, in formulating rules for

such dispositions, the courts often refer to the principles governing charitable trusts, which would include this Code.

Ark. Code Ann. § 28-73-413 ed. notes (Westlaw through 91st Ark. Gen. Assembly).

The commentary supports SRMC's argument that the legislature had no intention of forbidding the application of cy pres to charitable bequests, and it certainly did not expressly do so. The General Assembly has not removed bequests from the realm of cy pres; thus, the circuit court did not err in applying the doctrine to the charitable devise at issue here.

### D. Whether Tom Alexander Had Charitable Intent

Having affirmed the circuit court's finding that cy pres applies to charitable bequests, we now discuss appellants' contention that Alexander did not have charitable intent when he made the devise to Sparks Hospital. Appellants argue that Alexander intended the bequest to be a gift and not a charitable devise when he set forth that the residuary estate should go to SMH "as a memorial gift to permit the hospital to make necessary improvements or to purchase necessary equipment." Appellants argue that without the testator's declaration of a specific purpose, "such as fighting a disease or helping a certain class of citizens," the circuit court found charitable intent where there is none. We disagree.

The analysis in *Covenant*, *supra*, is relevant to our discussion of the instant case. In *Covenant*, one issue was whether the testator had charitable intent when he created a testamentary trust intended for the management of property and to pay income to life-estate beneficiaries.



Our supreme court held:

> Although First Presbyterian and First Baptist are charitable organizations, the will neither provided that the devise was to serve a charitable purpose nor restricted the churches from using the farm's proceeds for noncharitable purposes. Rather, a plain reading of the instrument reveals that the only identifiable purpose of the testamentary trust was to administer the life estates, which are not charities. The will directed the trustee to "give, devise and bequeath" the residue of his property to the churches. It then directed the trustee "to sell all real estate in their discretion as soon as the law permit[s], taking into consideration the existence of the life estates hereinbefore created, and distribution of the proceeds therefrom in accordance with this bequest." Giving these plain words their ordinary meaning, we find that the only duty Carpenter gave to the trustee was to hold the farmland as a testamentary trust during the life of the lifetime beneficiaries and to thereafter distribute the proceeds of the property to the churches. It does not direct the bank trustee or the churches to ensure that the use of the property be for a purpose benefiting any charity. Our statute limits the application of cy pres to instances where a "particular charitable purpose becomes unlawful, impracticable, impossible to achieve, or wasteful." Ark. Code Ann. § 28-73-413(a). Since the will identifies no particular charitable purpose, cy pres could not be used to reform the trust.

*Covenant*, 2016 Ark. 138 at 7–8, 489 S.W.3d at 158.

In creating a charitable trust the settlor must describe a purpose of substantial public interest. *Kohn v. Pearson*, 282 Ark. 418, 420, 670 S.W.2d 795, 796 (1984). The finding of Alexander's charitable intent hinges on the circuit court's interpretation of his specific bequest that his estate was "a memorial gift to permit the hospital to make necessary improvements or to purchase necessary equipment." The circuit court found that this bequest fell under the charitable purpose of the "promotion of health." Arkansas Code Annotated section 28-73-405 identifies "the promotion of health" as a charitable purpose, and the necessity of up-to-date medical equipment and facilities in a hospital for the promotion of health is self-evident. Unlike the testator in *Covenant*, Alexander set forth a specific use for his estate, and the court's reasoning concerning the underlying charitable intent of that bequest—to promote public health—is not clearly erroneous.

15

E. Whether SRMC is Capable of Carrying Out Alexander's Charitable Intent

Appellants argue that the circuit court erred when it found that SRMC was the appropriate cy pres beneficiary of Alexander's bequest because SRMC is not similar to SMH and thus incapable of carrying out any charitable intent. While we agree that SRMC is not the same entity as SMH, we disagree that SRMC is not the appropriate cy pres beneficiary and affirm.

Appellants assert that

[t]here is nothing in the will that indicates that Tom Alexander intended for his estate to benefit an osteopathic medical school. The circuit court's decision was heavily based on the circuit court's conclusion that Tom Alexander intended to support care administered in hospitals rather than the physical structure itself.

The circuit court ordered SRMC to use the funds from the estate "solely in pursuit of its hospital–like services such as providing medical care and community programs at the medical school or in the clinic owned by SRMC in Fort Smith, Arkansas, and to memorialize the accomplishments in the name of Tom Alexander[.]" The circuit court referred to the following relevant findings to support its decision that SRMC is the appropriate cy pres beneficiary. SRMC executive director Thomas Webb testified that SRMC continues SMH's mission of "promoting healthcare through money." From the profits of the asset–purchase agreement and SRMC's collection of past-due accounts, SRMC has pledged up to $50 million to the Degen Foundation to create and develop an osteopathic medical school. The purpose of the osteopathic school is to train physicians who will, in turn, provide healthcare to the Fort Smith community. The clinic will be across the street from the medical school, which will be built and owned by the Degen Foundation, and will be managed by the nonprofit organization, Mercy Health Systems, will be "a fully

functioning clinic that is staffed with regular physicians, nurses, and staff that will be providing services to our public" and will have "full functioning treatment rooms." SRMC pledged that if the residuary estate is granted to it, SRMC will direct the funds toward completion of the medical school building and purchasing necessary medical equipment for the medical school. SRMC also suggested that the funds could be used to build the clinic to provide healthcare to the community. Clinics now provide care that was once relegated to hospitals, and Alexander "sought to support care administered in hospitals rather than the physical structure itself." SRMC fulfills a charitable purpose by educating and training doctors, conducting medical research, and providing patient care.

We have upheld the circuit court's decision that the entity that operated Sparks Hospital was the intended object of Alexander's bequest and that Alexander had the charitable intent to promote public health when he made the devise to Sparks Hospital. It follows that we find no error in the circuit court's decision that Alexander's estate should be used to further the patient-care and community programs that a new clinic will provide to the Fort Smith community. The circuit court reasonably surmised that Alexander intended to help provide medical care and promote the good health of the people in the surrounding area with his express direction that the residuary of his estate should be used to purchase necessary equipment and make necessary improvements. The circuit court fashioned a use for the funds as near to Alexander's intent as possible under the circumstances, and on this point we affirm.

Affirmed in part; reversed in part.

GLADWIN, GLOVER and WHITEAKER, JJ., agree.

HIXSON and BROWN, JJ., dissent.

**KENNETH S. HIXSON, Judge, dissenting**. I agree with the majority's conclusion that Sparks Regional Medical Center (SRMC) is not the same entity as Sparks Hospital, and thus that the trial court's decision cannot be affirmed on that basis. I also agree with the majority's holding that the cy pres doctrine can, under the proper circumstances, be applied to a charitable bequest for the reasons stated by our supreme court in *Lowery v. Jones*, 272 Ark. 55, 611 S.W.2d 759 (1981). However, upon examination of these facts, I believe the trial court clearly erred in applying the cy pres doctrine to direct the residuary of the estate to SRMC. Therefore, I would reverse the trial court's decision, and I respectfully dissent.

The primary objective when construing the language of a will is to ascertain and effectuate the intent of the testator. *Covenant Presbytery v. First Baptist Church*, 2016 Ark. 138, 489 S.W.3d 153. The cy pres doctrine is the principle that equity will, when a charity originally or later becomes impossible or impracticable of fulfillment, substitute another charitable object which is believed to approach the original purpose as closely as possible. *Slade v. Gammill*, 226 Ark. 244, 289 S.W.2d 176 (1956). It is a principle of construction of trusts based on a judicial finding of the donor's intention as applied to new conditions. 14 C.J.S. *Charities* § 44 (2017). The reason for the cy pres doctrine is to permit the main purpose of the donor of a charitable trust to be carried out as nearly as possible when it cannot be done to the letter. *Bosson v. Woman's Christian Nat'l Library Ass'n*, 216 Ark. 334, 225 S.W.2d 336 (1949).

The will executed by Tom Alexander bequeathed the remainder of his property to Sparks Hospital to permit the hospital to make necessary improvements or to purchase

necessary equipment. At the time the will was executed, Sparks Hospital owned and operated a nonprofit hospital in Fort Smith. It is evident that Mr. Alexander's will contemplated the existence of an operating hospital and that his intent was to fund improvements to that hospital.

By the time of Mr. Alexander's death, Sparks Hospital had changed its name to SRMC and sold its hospital business to Health Management Associates, Inc., a publicly traded for-profit entity. As a result of the sale in 2009, SRMC no longer owns or operates a hospital. SRMC does, however, continue to exist as a nonprofit corporation.

The executive director of SRMC testified that the present function of SRMC is to continue its mission of providing healthcare and healthcare education for the surrounding area of western Arkansas and eastern Oklahoma. He further testified that the name "Sparks" is only used to handle business matters, which he characterized as "financial unwinding." He went on to state that SRMC contributed financial support to an osteopathic medical school and that it planned to fund construction of a clinic across the street from the school.

In my view, the current functions of SRMC are not aligned with the testamentary intent expressed in Mr. Alexander's will. SRMC no longer operates a hospital, no longer has a license to operate a hospital, and no longer provides any medical care directly to patients. If granted the residuary estate, SRMC will not use the funds to make improvements to a hospital or purchase necessary equipment for a hospital as contemplated by the will. Under these circumstances cy pres should not have been applied, and therefore I would reverse the trial court.



**WAYMOND M. BROWN, Judge, dissenting.** For the following reasons, I respectfully dissent from the majority opinion.

## I. *Facts*

On July 21, 1966, at the age of 21, an unmarried Tom Alexander executed a valid Last Will and Testament stating the following, in pertinent part:

### ITEM II

If I am not survived by a wife or by any children, I then give, devise and bequeath all of my property of every kind and character and wheresoever situated as follows: one-half to my brother, Frank Alexander, and one-half to my mother, Wanda Alexander.

### ITEM III

If I am not survived by a wife or by any children, I then give, and if either of the beneficiaries mentioned in Item II above should predecease me, I then give, devise and bequeath all of my property of every kind and character and wheresoever situated to the survivor of said beneficiaries.

### ITEM IV

If I am not survived by a wife or by any children, and if my mother and brother both predecease me . . . . After the allowance for Edna Brewer, I give, devise and bequeath the remainder of my property as follows: To Sparks Hospital to make necessary improvements or to purchase necessary equipment.

Tom died on March 18, 2015, having no wife, no children, and being predeceased by both his mother and brother as well as Edna Brewer. An order probating Tom's will and appointing M. Elise Alexander as the personal representative of the estate was entered on April 15, 2015. On August 27, 2015, Elise filed a Petition to Determine Heirship.[2] Noting

---

[2]An August 25, 2015 inventory of the estate estimated the value of real estate to be $5,661,104.

that Frank passed leaving a spouse, Ellen Bales, she referenced the language in Item III regarding "survivors [sic] of said beneficiaries."[3] She went on to note other language in the will that was "without any reference to the foregoing language regarding 'the survivors [sic] of said beneficiaries,'" which established an annuity for the benefit of Tom's former nanny and sought distribution of the balance of the estate to Sparks Hospital. She further advised that Sparks Hospital had become a part of Sparks Health System in 1999; that Sparks Health System[4] had been purchased by Health Management Associates, Inc. (HMA), in 2009; and that HMA had been purchased by Community Health Systems Professional Services Corporation (Community Health) in 2014.[5] Twenty potential heirs were listed in the petition, including Community Health, Sparks Regional Medical Center (SRMC), and Sparks Health System.[6]

John Holleman, a named heir and attorney,[7] responded to the petition on January 5, 2016, asserting that "all the gifts in [Tom's] will fail" and "must be distributed through

---

[3]The will references a survivor and not "survivors."

[4]The secretary of state showed the corporation of Sparks Health System to have a fictitious name of Fort Smith Regional Healthcare Foundation.

[5]In its March 4, 2016 response to the requests for admissions from James Brooks and Robert Brooks, SRMC admitted that Community Health purchased by Fort Smith HMA, LLC in 2013; however, Fort Smith HMA, LLC denied the same in its February 29, 2016 response to the requests for admissions from James Brooks and Robert Brooks.

[6]Regions Bank (Regions) was substituted for M. Elise Alexander as the estate's personal representative on December 1, 2015.

[7]He was joined by two other attorneys.

intestacy." Other heirs would subsequently enter appearances and join and adopt Holleman's response. Fort Smith HMA, LLC d/b/a SRMC responded to the petition on January 15, 2016, asserting that "it should be permitted to honor Mr. Alexander in the manner he specifically requested, i.e. by benefitting the community with necessary improvements to the campus or the addition of new equipment" and asserted a claim for unpaid services rendered to Tom.[8] Separate appellant Evelyn House filed her response to the petition on January 25, 2015, asserting that Sparks Hospital "no longer exists," having been bought by SRMC, and that cy pres does not apply because "[a] plain reading of the whole instrument does not show that ★★★ had a solely or purely charitable purpose ★★★ when he created his ★★★" and that, in any event, Fort Smith HMA, LLC, is not a charitable entity that cy pres can apply to.

SRMC responded to the petition on January 26, 2016, stating that Sparks Memorial Hospital was an Arkansas nonprofit association at the time Tom executed his will in 1966; that Sparks Memorial Hospital became SRMC, an Arkansas nonprofit association, on June 2, 1970; and that SRMC became an Arkansas nonprofit corporation on June 27, 2002. On December 1, 2009, SRMC sold "substantially all of its tangible assets"; however, SRMC asserted that it "is still in existence and that the purpose of the entity remains the same, namely to promote healthcare in the Fort Smith Region." Accordingly, SRMC argued that "the fact that [SRMC] no longer owns the hospital does not necessarily mean the bequest

---

[8]The secretary of state and the State of Arkansas's Department of Health both showed the corporation of SRMC to also have a fictitious name of Fort Smith Regional Healthcare Foundation.

lapses" and asserted that the cy pres doctrine should allow SRMC to be determined to be the beneficiary of Tom's will.

Holleman replied to SRMC's response on January 23, 2016, stating that Tom did not intend to devise his estate to an entity that does not operate a hospital, thereby asserting that while SRMC may exist, it "no longer bears any resemblance to the 'Sparks Hospital'" mentioned in Tom's will where the hospital iS not run by SRMC but a for-profit entity. Holleman also noted that SRMC's assets that were excluded from sale were used to create the Degen Foundation, which is a nonprofit corporation whose purpose is to build and operate a new medical school in cooperation with the Arkansas Colleges of Health Education, and that it is the Degen Foundation that is performing SRMC's asserted purpose, not SRMC. Additionally, Holleman reasserted House's argument that cy pres does not apply because the sole purpose of Tom's will was not a charitable purpose, but "only intended to be a last resort in the event his other devises failed." Alternatively, he argued that if cy pres could apply, an award to SRMC would not accomplish Tom's intent.

A hearing on the matter was held on April 5, 2016. In pertinent part, not already covered above, Thomas Webb, executive director of SRMC, testified that SRMC no longer owns the hospital, no longer has a license to operate a hospital, "does not intend to operate a hospital," and no longer provides "any medical care directly to patients." Webb testified that SRMC's function was "to continue its mission of providing healthcare and healthcare education for the surrounding area of Western Arkansas and Eastern Oklahoma" and that it did so "with money." This was despite his testimony that the name SRMC "is only used to handle business matters, financial unwinding type of information" and that the

"bulk of the $41 million-plus" gained from the sale of the hospital's assets was "gifted in a restricted manner to the Degen Foundation for the development of an osteopathic medical school"; Webb is the executive director of the Degen Foundation as well. Because of its gift to the Degen Foundation and the purpose of that gift, he testified that he thought SRMC is a hospital. He provided options for which Tom's bequest could be used, including the college's building itself at a price in the "$1 million range"; to purchase medical equipment—none of which would be used on actual patients—at a cost of $1,168,000;[9] a digital audio-visual system with "two of only three laser type projectors that exist in Arkansas" at a cost of $1,066,000; and the construction of a "fully-functioning" clinic across the street from the school at a cost of $4.1 billion.

Webb further admitted SRMC would not own any part of the college and does not intend to own any part of it, the school would not have a hospital license, and the building would be owned by the Degen Foundation. The clinic would be managed by Mercy, operating under its Medicare and Medicaid provider numbers with Mercy branding and a reference to the Arkansas College of Health Education, and was "owned by us"; "us" was not defined.[10] He denied that Tom's will gave a charitable gift and opined that "the citizens

---

[9]The equipment would include a model lab and a simulation lab.

[10]The lack of definition is confusing because of Webb's positions as executive director of both SRMC and the Degen Foundation. It may be presumed he meant SRMC, but this seems unlikely given that $41 million of the $40–$50 million SRMC acquired during the sale was gifted to the Degen Foundation.

that use the facilities on an ongoing basis would benefit from having a hospital with improvements and necessary equipment to run it."

John Wommack, testified that Tom's estate would have to pay estate taxes of about $350,000 to $400,000, if the gift went to anyone who was not a charitable 501(c)(3) organization, though the gift would be a "100 percent estate tax charitable deduction" if the bequest was entirely to a charity with that status. David Rothenberger testified that he is an employee of "Sparks Health System, which is ultimately owned by Fort Smith HMA, LLC," which is an "owned subsidiary of Community Health Systems," all of which are for-profit companies. He is the market chief officer for Fort Smith HMA, LLC. He testified to doing the "due diligence" for the sale which was for the purchase of the "entire tangible and intangible assets of Sparks Health System," which included "substantially all the assets" of SRMC, which were transferred to Fort Smith HMA, LLC on December 1, 2009. At 12:01 a.m., while continuing to use the SRMC name, Fort Smith HMA, LLC, took over operations, having hired all the employees and medical staff as part of the agreement, implemented their patient-registration system, using the same Medicare and Medicaid provider numbers from prior to the sale, and providing hospital services "comparable to" and "not substantially changed" from the services SRMC provided.[11] Rothenberger testified that Fort Smith HMA, LLC, would recognize Tom with "some kind of memorial whether

---

[11]Fort Smith HMA, LLC ceased providing a couple of services and added a few services in addition to renovating ten emergency rooms and adding ten operating rooms.

it be a plaque, if we could do that, if it's a particular wing of the hospital or if it's something" along that line, "whatever would fit the need." He believed that Fort Smith HMA, LLC, should receive the funds "because the will specifically mentions Sparks Hospital" and Fort Smith HMA, LLC, "[has] continued to operate Sparks Hospital." He went on to testify that the sale of assets from SRMC to Fort Smith HMA LLC, was "not a merger" and "not a continuation of the same entity that was operating Sparks Hospital in 1966," but was an "asset purchase."

Following the hearing, post-trial briefs were filed by Tom's heirs and SRMC filed its proposed findings of fact and conclusions of law. The circuit court entered its order with findings of fact and conclusions of law on June 15, 2016, in which it found the matter to be a case of first impression in the State of Arkansas. Furthermore, it stated the following:

> 31. This Court cannot ignore the realities of the development of medical care. Medical procedures that were formerly conducted only in hospitals are now performed in clinical settings. This fact is critical here because the Testator sought to support care administered in hospitals rather than the physical structure itself. SRMC, through the clinic, will provide a variety of hospital-like operations. Furthermore, the Court cannot ignore the fact that providers, such as, doctors, are necessary to provide healthcare to the community and allow healthcare institutions, such as clinics and hospitals to function. SRMC's overall mission is essentially to improve the health status of the residents of the community's health and well-being. SRMC is continuing it's [sic] charitable purpose by educating and training doctors, conducting medical research, and providing patient care at the medical clinic in Fort Smith.

> 32. The Court finds that SRMC, although operating under different articles of incorporation and in a different name, currently exists as a legally viable non-profit corporation that continues to function and is capable of carrying out the intent and purpose of the Testator's memorial gift, and is therefore, entitled to the Testator's residuary estate.

> 33. Furthermore, this holding is sustainable for a second reason. Even if the Court were to find that the Testator intended Sparks Hospital, the non-profit hospital, not the non-profit entity, to be the beneficiary of his residuary estate, the

non-profit hospital no longer exists. Sparks Hospital, the hospital, is being operated as a for-profit hospital. As such, this Court may look to the doctrine of *cy pres*.

. . . .

35. Before the *cy pres* doctrine can be applied, however, a court must find that the testator intended for a devise to have a charitable purpose. For a devise to have a charitable purpose, the devise must achieve some public benefit, such as promotion of health.

36. This Court finds that the Testator's bequest was to a charitable organization and for a charitable purpose. At the time the Testator executed his Will, "Sparks Hospital" was a charitable institution and organization. If fact, it remained a charitable institution and organization until December of 2009. Although it has recently been held that the fact that a devise is left to a charitable institution alone does not designate a devise as a charitable devise (*Presbytery*, 2016 Ark. 138 (2016)), the Testator's devise was to a charitable institution and organization and contained a charitable purpose. Particularly, the Testator expressly stated in his Will that the residuary of his estate was to be used by Sparks Hospital for the purposes of purchasing necessary equipment and making necessary improvements. The Decedent expressly restricted the bequest to maintaining and updating the community non-profit hospital. The devise is devoted to the accomplishment of the promotion of health, a purpose beneficial to the community and of substantial public interest.

37. Furthermore, Mr. Wommack testified that if the Testator's residuary estate were received by anyone other than a charitable organization, the estate would have to pay estate taxes estimated to be around $400,000. However, if someone who is a charitable organization received the Testator's residuary estate, the estate will not have to pay any estate taxes; the estate will receive an estate charitable contribution deduction. Additionally, Mr. Rothenberger testified that if [Fort Smith HMA, LLC] were to receive the Testator's residuary estate, the estate would incur a corporate income tax in addition to the estate tax.

38. Since Sparks Hospital, the non-profit hospital, no longer exists, the Court finds that it is impossible to carry out the Testator's stated charitable purpose. As such, the Court may utilize *cy pres* to reform the will.

39. For the reasons set forth in paragraphs 23-31 or this Order, the Court finds that SRMC, is the appropriate *cy pres* beneficiary of the Testator's bequest.

This timely appeal followed.

*II.* Standard of Review

We review probate matters de novo but will not reverse the circuit court's findings of fact unless they are clearly erroneous.[12] A finding is clearly erroneous when, although there is evidence to support it, the appellate court is left on the entire evidence with the firm conviction that a mistake has been committed.[13] We must also defer to the superior position of the lower court sitting in a probate matter to weigh the credibility of the witnesses.[14]

The appellants' first argument on appeal is that the circuit court erred by finding that Tom Alexander intended to give his estate to a specific legal entity and its corporate successors. They specifically argue that all Tom's intended gifts lapsed, specifically the gift to Sparks Hospital, which no longer exists and that the circuit court erred in finding that Tom's gift was to the entity behind the hospital and that he was "uninterested in the physical structure itself." Finally, they argue that the circuit court erred in finding that the functions of SRMC remained the same through its transition from Sparks Hospital and by conflating SRMC with the Arkansas Colleges of Health Education.

This court's primary objective when construing the language in a will or trust is to ascertain and effectuate the intent of the testator or settlor as long as that intent is not

---

[12]*Patton v. Fulmer*, 2016 Ark. App. 260, at 7, 492 S.W.3d 512, 516 (citing *In re Estate of Kemp*, 2014 Ark. App. 160, 433 S.W.3d 911).

[13]*Id.*

[14]*Id.*

contrary to the law.[15] Where the language of a will expressly states the testator's intention, the intent must be gathered from the four corners of the instrument.[16] It is only proper to invoke the rules of construction when the language is ambiguous.[17] In order to determine the intentions of the testator, consideration must be given to every part of the testamentary instrument.[18] Extrinsic evidence may be received on the issue of the testator's intent if the terms of the will or trust are ambiguous.[19]

Looking for the intent of the testator, Tom, the will expressly states, "If I am not survived by a wife or by any children, and if my mother and brother both predecease me . . . . After the allowance for Edna Brewer, I give, devise and bequeath the remainder of my property as follows: To Sparks Hospital to make necessary improvements or to purchase necessary equipment." He was predeceased by every named person in the will, leaving only the bequest to Sparks Hospital. A clear reading of the will first shows that Tom intended a charitable gift to "Sparks Hospital" for the benefit of improving Sparks Hospital. However, Sparks Hospital, the nonprofit, no longer exists as Tom knew it, having become SRMC, a for-profit. In order to move any further, this court must determine if Tom's bequest was a

---

[15]*Covenant Presbytery v. First Baptist Church*, 2016 Ark. 138, at 4, 489 S.W.3d 153, 156 (citing *Bailey v. Delta Tt. & Bank*, 359 Ark. 424, 198 S.W.3d 506 (2004)).

[16]*Id.*

[17]*Id.*

[18]*Id.*

[19]*Id.* (citing *Burnett v. First Commercial Tr. Co.*, 327 Ark. 430, 939 S.W.2d 827 (1997)).

charitable trust because all the appellants' arguments are moot if Tom's will did not create a charitable trust.

A trust may be created by transfer of property to another person as trustee during the settlor's lifetime or by will or other disposition taking effect upon the settlor's death.[20] When a charitable trust is created, legal title is passed to the trustee to hold it for the benefit of a charitable purpose.[21] This court has stated that in creating a charitable trust, the settlor must describe a purpose of substantial public interest.[22] Arkansas Code Annotated section 28-73-305 lists specific charitable purposes:

(a) A charitable trust may be created for the relief of poverty, the advancement of education or religion, the promotion of health, governmental or municipal purposes, or other purposes the achievement of which is beneficial to the community.

(b) If the terms of a charitable trust do not indicate a particular charitable purpose or beneficiary, the court may select one (1) or more charitable purposes or beneficiaries. The selection must be consistent with the settlor's intention to the extent it can be ascertained.[23]

---

[20]Ark. Code Ann. § 28-73-401(1) (Repl. 2012).

[21]*Stone v. Washington Reg'l Med. Ctr.*, 2017 Ark. 90, at 9, 515 S.W.3d 104, 110 (citing *Covenant Presbytery*, 2016 Ark. 138, 489 S.W.3d 153).

[22]*Id.* (citing *Kohn v. Pearson*, 282 Ark. 418, 670 S.W.2d 795 (1984).

[23]Ark. Code Ann. § 28-73-305(a) & (b) (Repl. 2012)).

It is elementary that charitable trusts will not be permitted to fail if the intention of the

creator of such trusts can be carried out, and effect be given thereto.[24]

The record is clear that Tom did not create a trust of any sort, let alone charitable,

as his gift was to be given directly to Sparks Hospital for it to use in accordance with his

direction. The cy pres doctrine is inapplicable to a will that does not create a charitable

trust.[25] In addressing the appellants' second point, appellee cites *Lowery* for the following

statement:

> The bulk of the cases applying cy pres involve charitable trusts, rather than bequests,
> as here, and there is some authority that the doctrine is limited to charitable trusts.
> But the growing weight of authority, and better reasoned, is that the doctrine of cy
> pres is equally applicable to charitable bequests and devises. We can see no reason
> why the logic of cy pres, which was conceived as a method of achieving the ultimate
> aim of the donor "as nearly as possible" where his expressed intent for some reason
> became unattainable, is not equally sound where the bequest is outright rather than
> in trust, and this view is consistent with some of the dicta of our own decisions.[26]

However, it is clear that this language is dicta and not binding as our supreme court affirmed

the circuit court based where it held that:

> [The] elementary rule of construction that a bequest or devise will not fail because
> of a mere inaccuracy in the designation of the beneficiary, where the meaning of the
> testator can be gathered with reasonable certainty from the instrument itself, or where
> the identity of the object of his bounty can be shown by extrinsic evidence and such

---

[24]*State ex rel. Att'y. Gen. v. Van Buren Sch. Dist. No. 42*, 191 Ark. 1096, 89 S.W.2d 605, 609 (1936) (citing *Schell v. Leander Clark College*, 10 F.2d 542, 555) (1926)).

[25]*Covenant Presbytery*, 2016 Ark. 138, at 6, 489 S.W.3d at 157 (citing Ark. Code Ann. § 28-73-413(a)).

[26]*Lowery v. Jones*, 272 Ark. 55, 58–59, 611 S.W.2d 759, 761 (1981) (internal citations omitted).

evidence is always admissible for the purpose of identifying the beneficiary, where there is uncertainty or ambiguity in the designation.[27]

Under these facts, (1) Tom did gift to the entity of Sparks Hospital and likely its successors, but for the benefit of that hospital, i.e., that building; (2) like his other attempted gifts, his gift to Sparks Hospital lapsed so the circuit court erred in failing to find so; (3) the circuit court erred in finding that the functions of SRMC remained the same through its transition from Sparks Hospital; and (4) the circuit court erred by conflating SRMC not only with the Arkansas Colleges of Health Education, but also with the Degen Foundation. Accordingly, I would reverse and give the money to appellants. Items 2, 3, and 4 are addressed below in my discussion of Sparks Hospital.

### III.  *Sparks Hospital*

The evidence before the circuit court was that Sparks Hospital had become SRMC. However, SRMC sold substantially all its assets, including its goodwill and the use of its name to Fort Smith HMA, LLC. Webb testified that SRMC was allowed use of the name SRMC "only to handle business matters, financial unwinding type information." Rothenberger's testimony made it clear that SRMC had no connection to the hospital after Fort Smith HMA, LLC, purchased it and that Fort Smith HMA, LLC, was in complete control of the hospital. As the existing entity after the sale of its assets, goodwill, and name, SRMC does business as Fort Smith Regional Healthcare Foundation. Webb testified that SRMC's resolution states that its distributed funds "shall be used only for the purposes of

---

[27]*Id*. at 59, 611 S.W.2d at 760.

establishing an institution of health education and various activities relating to" and admits that Tom's will does not state any designation of funds for health education. But even if the will designated health education as a purpose for the bequest, the resolution explicitly states that the restricted purpose of SRMC's gift was communicated to the Degen Foundation. This is because the Degen Foundation will actually be doing the work to start the school and not SRMC.

Throughout his testimony, Webb speaks of "we" with regard to the actions being taken to open the osteopathic medical school and clinic. However, he clearly stated that SRMC d/b/a Fort Smith Regional Healthcare Foundation was not operating as a hospital; cannot operate a hospital; was managing accounts receivable accrued prior to the December 2009 sale, from which money was "still trickling in"; and gifted the "bulk of the $41 million–plus" gained from the sale of the hospital's assets "in a restricted manner to the Degen Foundation for the development of an osteopathic medical school." It appears that the "we" of which Webb is speaking is actually the Degen Foundation, which he is also the executive director of. Webb's testimony conflates the actions and intended actions of two completely separate entities. The circuit court apparently did so as well and did so in error.

Webb's testimony and other evidence from below, without regard to whether SRMC ever intends to dissolve, shows that SRMC—and therefore Sparks Hospital—no longer existed as an entity anywhere near similar to the entity that Tom made his bequest.[28] Furthermore, all the work that SRMC speaks of that it could use Tom's bequest for is being

---

[28]Webb testified that all SRMC had was its cash and its accounts receivable.

done and shall be maintained by entities other than itself. SRMC will own no stake in the intended medical school nor the intended clinic across the street and will have no hand in the creation or running of either as that will be handled by a combination of the Degen Foundation, the Arkansas Colleges of Health Education, and Mercy Hospital. Regardless of Webb's testimony that SRMC's function is to "continue its mission of providing healthcare and health education for the surrounding area of Western Arkansas and Eastern Oklahoma" by using money, the fact remains that, the entity itself, is no longer in the "hospital business";[29] and therefore, was in no position "to make necessary improvements or to purchase necessary equipment" as Tom directed his bequest to be used for. Furthermore, Webb testified that if SRMC received the bequest, its board of directors would decide what to do with the money, a decision which could be contrary to Tom's intent. Accordingly, I would affirm on this point.

Because I think we should reverse on the appellants' first point, I would not address the appellants' second argument that the circuit court erred in finding that the cy pres doctrine applies in the matter. However, alternatively, if a charitable trust was created and/or the cy pres doctrine can apply to charitable bequests, I would remand and order the circuit court to give the money to a similarly situated nonprofit as was Sparks Hospital, noting that

---

[29]"Hospital business" was defined in the agreement as "the Hospital and other healthcare facilities and business (including clinics and outpatient operations) owned and operated by Seller, including all real property, whether developed or undeveloped, associated with any of the foregoing and all business, structures, fixtures and other improvements thereof[.]"

the Degen Foundation or even the Sparks Healthcare Foundation—"the philanthropic arm of the hospital that raised funds that supported the hospital" according to Webb—*may* be an option if either is a nonprofit. I agree with the circuit court that the bequest cannot be given to Fort Smith HMA, LLC, because it would result in a large taxable event to the estate, which was clearly not Tom's intent having made his bequest to a non-profit hospital. In *Bosson v. Woman's Christian National Library Association*, our supreme court stated that:

> The meaning of the doctrine of cy pres is that when a definite function or duty is to be performed, and it cannot be done in exact conformity with the scheme of the person or persons who have provided for it, it must be performed with as close approximation to that scheme as reasonably practicable; and so, of course, it must be enforced, and the reason or basis for the doctrine is to permit the main purpose of the donor of a charitable trust to be carried out as nearly as possible where it cannot be done to the letter.[30]

Giving Tom's gift to SRMC is not a performance of Tom's will as it is not "as close approximation to that scheme as reasonably practicable[.]"

Therefore, I respectfully dissent.

*Holleman & Associates, P.A.*, by: *Timothy A. Steadman* and *Jerry Garner*, for appellants David Neal, Judy Kruse, John Holleman, Dr. Cynthia Frazier, Dr. Marianne Massey, Kathy Barber, and Alice Boyle.

*Booth Law Firm, P.L.C.*, by: *Frank W. Booth*, for appellant Evelyn Ann House.

*Jones, Jackson & Moll, PLC*, by: *Mark Moll* and *Kathryn A. Stocks*, for appellee.

---

[30]216 Ark. 334, 338–39, 225 S.W.2d 336, 338 (1949).